### Charles Smith and Ada Smith v. Local Branch No. 714 of the Iron Hall of Mt. Carmel.

1. INSURANCE COMPANIES—*Construction of the Statute Relating to Foreign Companies Doing Business in This State.*—The intent of the law requiring foreign insurance companies to comply with the terms imposed, as a condition for the right to do business in this State, is to

470    APPELLATE COURTS OF ILLINOIS.

VOL. 77.] Smith v. Local Branch No. 714 Iron Hall of Mt. Carmel.

protect citizens of the State from imposition by fraudulent and insolvent companies, and to facilitate collections for losses, without being compelled to go to other States to establish and secure them.

2. SAME—*To What Matters the Statute Regulating Foreign Companies Does Not Apply.*—The statute relating to foreign insurance companies doing business in this State has no relation to collateral matters that can not affect the insured one way or the other, and should not be held to embrace every act which an insurance company may find it convenient to do, as prohibited.

**Mortgage Foreclosure.**—Trial in the Circuit Court of Wabash County; the Hon. PRINCE A. PEARCE, Judge, presiding. Hearing and decree for complainant. Appeal by defendant. Heard in this court at the February term, 1898. Affirmed. Opinion filed September 9, 1898.

S. Z. LANDES, attorney for appellants.

MUNDY & ORGAN, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

This suit is brought to foreclose a mortgage on real estate, executed by appellants to appellee, August 1, 1892, to secure the sum of $300 of borrowed money, and due five years after date, with interest at six per cent. It contained a clause providing for the payment of reasonable solicitor's fees for foreclosing it.

The main defense is that the appellee is the agent of The Supreme Sitting of the Order of the Iron Hall, which is an insurance company, organized under the laws of the State of Indiana, located at Indianapolis in that State, and which had power under the law of its creation to establish local branches; and that because it did not comply with the law of this State, fixing the conditions on which it would be authorized to do business here, the mortgage is void and can not be enforced.

The minor defense relates only to the allowance of $55 to complainant, as solicitor's fees, for foreclosing the mortgage, when there was no allegation in the bill that such a sum was a reasonable fee.

It was admitted that neither the Supreme Sitting Order, nor its local branch No. 714, ever complied with the law of

this State, so as to entitle it, as a foreign corporation, to a legal right to do business here, if the law applied to it; but in the view we take of the case, it is unnecessary to inquire whether the law has any application to it or not; hence we express no opinion on the question as to whether appellee is such an insurance company as is exempt from the necessity of filing a copy of its charter with, and making a verified report of the various matters required by the statute to the State auditor, as a condition on which it could lawfully do business in this State, and shall assume appellant's contention that such a requirement was necessary to be correct, and that whatever business it did, should, in the language of the statute, " be deemed to be done in violation of the law." This brings us to the question, what kind of " business " does the law refer to, as having been done " in violation of law ? " Does it mean every act the company may have done in this State, whether connected or disconnected with a contract for insurance ? We so understand the contention of counsel for appellant, as his main point is expressed as follows : " It is contended on part of appellant * * * that it was unlawful for said Supreme Sitting, even in the name of its agent, the appellee, to take said note and mortgage, and therefore the same are uncollectible." A broader or more comprehensive answer to the question could not well be made. In support of his view of the matter, counsel cites Cincinnati Mutual Health Assurance Co. v. Rosenthal, 55 Ill. 85.

In that case the company entered into a contract with Rosenthal, insuring his health in the sum of twenty-five dollars for each week he might be prostrated by disease, for the term of five years, and also agreed to issue to him $500 of its guaranteed capital stock, for all of which Rosenthal paid $150 in cash, and gave the company his note for $350 due on demand, to be paid subject to the call of the directors of the company. Suit was brought on the note, and as the company had not complied with the laws of this State, as a condition on which it could do insurance business here, the court held the note void.

472 ' APPÉLLATE COURTS OF ILLINOIS.

VOL. 77.] Smith v. Local Branch No. 714 Iron Hall of Mt. Carmel.

· The note was given as well for the premium for the risk as for the stock, and therein the company was doing the business of "insurance," which was the thing it was prohibited from doing, without complying with the law. If the note had been given for the stock alone, the decision of the court might have been different from what it was, but since the sale of the stock and the contract of insurance constituted one transaction, and there was no way of telling what was agreed to be given for the stock alone, the whole contract became tainted with the illegal act of insuring Rosenthal, and hence could not be enforced.

We are unable to discover any analogy of that case to the case we are considering.

The intent of the law requiring foreign insurance companies to comply with the terms imposed, as a condition for the right to do business here, was to protect the citizens of the State from imposition by fraudulent and insolvent companies, and to facilitate collections for losses without being compelled to go to other States to establish and secure them; and each requirement of the law directly relates to acts of insurance or to something immediately growing out of the acts, and has no relation to collateral matters that can not affect the insured one way or the other, and in construing the law this fact should not be lost sight of, and a construction should be avoided, if possible, that will enable dishonest persons to retain moneys secured by methods scarcely better than a breach of trust.

The law should not be held to embrace every act which an insurance company may find it convenient to do, as prohibited. Suppose the Supreme Sitting Order of the Iron Hall had become possessed of personal property, and had sent it into this State and sold it, and taken the notes of purchasers for it; would the notes have been held void, if the order had been held such an insurance company as was prohibited from doing business in this State?

There was nothing morally wrong on the part of appellee in loaning the money to appellant Charles Smith, nor was there anything wrong on his part in borrowing it.

How appellee became possessed of the money is not a matter that can be inquired into here.  If, in fact, the money had been won by gambling with other parties, still the contract of loaning it and taking a mortgage to secure it, would not have been tainted with the gambling acts.

There may be, and doubtless are, many thousands of dollars loaned in this State by foreign insurance companies, who have never actually issued a policy of insurance here, and who have never complied with the law so as to become entitled to do an insurance business in this State; and shall it be said that all such loans are illegal?

We are unable to see wherein the loaning of the money to appellant Charles Smith, and taking a mortgage to secure it, infringed upon any law of the State, and we must hold that it was not insurance business of the character which the statute declares "shall be deemed to be done in violation of law."

As to the point made by appellant's counsel in regard to the allowance of solicitor's fees—the mortgage secured them, the bill claimed them, the evidence showed they were reasonable, and we are unable to see how the court could have disallowed them without committing an error.

. Appellant Charles Smith claimed in his answer to hold a certificate of insurance for $1,000 on his life, issued by the Supreme Sitting Order of the Iron Hall, dated July 28, 1890, and which matured and became payable under the laws of the order seven years after the date, and on which he claimed to have paid all the assessments made on him, and which he prayed might be set off against the mortgage, and making his answer a cross-bill he prayed for "such relief as to equity appertains," in case the court found that the order was such an insurance company as was not required to report to the auditor of State in order to legally do business in this State.  The evidence failed to show all assessments had been paid, but it showed the reverse, and that, under the laws of the order, the certificate had not become payable.

We find no error in the record, and the decree is affirmed.