## UNLAWFUL USE OF FOREIGN FIRE INSURANCE FRANCHISE.

[Circuit Court of Franklin County.]

### STATE v. AMAZON INSURANCE COMPANY.

*Fire Insurance—Nature of the Business Transacted—The Contract Personal—Place of Transacting the Business—Unlawful Use of Franchise.*

A fire insurance company, organized under the laws of another state, that maintains an office in this state and there enters into contracts of insurance respecting property in other states, or transacts the business of insurance respecting property in other states, is engaged in this state in the transaction of the business of insurance, notwithstanding it does not enter into contracts of insurance with ·citizens of this state, nor insure property in the state.

SUMMERS, J.; WILSON AND SULLIVAN, J. J., concur.

The averments of the petition, filed May 16, 1902, are as follows:

"The relator is the duly elected, qualified and acting attorney general of the state of Ohio. Said relator avers that the defendant, the Amazon Insurance Company, is a corporation organized under the laws of the state of West Virginia. That said company is so incorporated as a stock company for the purpose of making insurance upon house, buildings and all other kinds of property against loss or damage by fire or lightning. That said defendant corporation has exercised franchises, privileges and rights in this state in contravention of law, and especially in the following particulars, to-wit:

"1. Said defendant company has located and now has its principal office or place of business in the city of Lima, Ohio, and is now and for a long time past has been transacting its said business of insurance within this state.

"2. Said defendant has not procured from the superintendent of insurance of this state a certificate of authority as required by Section 3656, Revised Statutes of Ohio.

"3. Said defendant is not possessed of the amount of actual capital required of similar companies organized under the provisions of the laws of Ohio.

"4. Said defendant company has not filed with the superintendent of insurance of this state, a certified copy of its charter, nor has it filed a statement under the oath of its president, vice-president or other chief officer and the secretary of the company, stating the name of the company, the place where it is located, and the amount of its capital with a detailed statement of the facts and items required from the companies organized under the laws of this state by Sections 3653 and 3654, Revised Statutes.

"5. Said defendant company has not complied with any of the laws of the state of Ohio, regulating and applying to companies organized under the laws of other states, and transacting the business of insurance in this state."

Wherefore, the attorney general prays that said company may be ousted from transacting such business within this state.

For amended answer, the defendant says: "That it has never done nor attempted to do any business in the state of Ohio; that it has never solicited nor attempted to solicit any business of any kind or nature in the state of Ohio and that it is not engaged in business in said state; that it denies the allegation first made in plaintiff's petition, to-wit, 'That it is now and has been for a long time past transacting its said business of insurance within this state.'

"Defendant admits each and every other allegation contained in plaintiff's petition."

A special master was appointed to take the testimony and to report the same together with his findings of fact and conclusions of law thereupon.

Among his findings of fact are the following:

"2. That the defendant has appointed a statutory attorney, to comply with the laws of West Virginia, and some of the records showing corporate capacity of the company are kept at Charleston, West Virginia; but that the defendant company for the purpose of transacting all business contemplated by its charter has, since its organization, been located at Lima, Ohio, and now has its principal office or place of business in the city of Lima, Ohio.

"7. That the defendant company in conducting its business is managed and controlled entirely by the secretary of the company who resides at Lima, Ohio; that this secretary receives all premiums, disburses all the money of the company, keeps all the accounts of the company, and pays all the losses of the company at Lima, Ohio.

"8. That the total number of policies issued by the defendant company is four hundred and ninety-seven, ninety-nine of which have been issued by the secretary direct from the office of the defendant company at the city of Lima, Ohio, and three hundred and ninety-eight of which have been issued from brokers, to whom blank policies were delivered by the secretary from the Lima office of the defendant company; and the average amount of each policy issued is a risk for the sum of three hundred dollars.

"10. That the defendant company never issued any policies on property of any kind situate within the state of Ohio; but its secretary in charge of its office at Lima, Ohio, received applications by mail for insurance, had authority to accept or reject the same, and in fact did accept a large number of such applications, collect the premium therefor, and deposit the policy addressed to the applicant in the post-office in the city of Lima, Ohio."

The special master concluded as a matter of law that the defendant was engaged in this state in the transaction of the business of insurance contrary to law. The defendant excepts to each of the master's conclusions of law, but to none of his findings of fact.

Section 289, R. S., as amended May 12th, 1902, (95 O. L., 553), provides that it shall be unlawful for any corporation, whether organized in this state or elsewhere, either directly or indirectly, to

engage in the business of insuring, or to enter into any contracts substantially amounting to insurance, or in any manner to aid therein, in this state, unless the same is expressly authorized by the statutes of this state, and such statutes and all laws regulating the same, and applicable thereto have been complied with.

Section 3656, R. S., provides that no insurance company, other than life, organized under the laws of any other state, shall do any such business in this state, until it procures from the superintendent a certificate of authority so to do; nor shall any person or corporation act as agent in this state for any such company, directly or indirectly, either in procuring applications for insurance, taking risks, or in any manner transacting the business of insurance, until it procures from the superintendent a license so to do.

The contention by counsel for the defendant is, that these statutes were enacted for the protection of citizens of Ohio only, and that inasmuch as it has not entered into a contract of insurance with any citizen of this state nor into any contract of insurance respecting any property in this state, it has not, within the provisions of the statute, transacted any business of insurance within the state.

The following citations are made in support of this contention:

"In the case of *The Commonwealth* v. *Long*, 1 Pa. Co. Ct., 190, McPherson, J., says: 'The test of doing business is whether the acts done were a part of the necessary work for effecting the object for which the association was formed and created.'

"And in the case of *Beard* v. *Publishing Company*, 71 Ala., 60: 'There must be a doing of some of the works, or the exercise of some of the functions, for which the corporation was created.'

"A foreign company holding its meetings for convenience in Pennsylvania at which subscriptions to stock were made and are sued upon in Pennsylvania, but which is engaged in the business of building a pavilion in New Jersey, is not doing business in Pennsylvania. *Wildwood Pavilion Co.* v. *Hamilton*, 15 Pa. Superior Ct., 389.

" 'The Minnesota statute, providing for the conditions upon which foreign building and loan associations may transact business in this state, and prohibiting under penalties the transaction of business by such foreign corporations unless the conditions have been complied with, I think necessarily refers to the ordinary business of such associations. . . . The same rule applies to any foreign

insurance where similar conditions, are required to be complied with before it shall do business in this state; the business referred to is its ordinary business of insurance. . . . The prohibition of the statute is only against transacting their ordinary peculiar business in this state so long as the statutory conditions are not complied with. *Sullivan* v. *Shcehan,* 89 Fed. Rep., 247.

" 'The law requiring foreign insurance companies to comply with the terms imposed, as a condition of doing business in this state relates to the business of insurance companies as such, and does not prohibit a company which has not complied therewith. from loaning money on mortgage within the state and prosecuting proper proceedings for the collection thereof.' *Smith* v. *Iron Hall,* 77 Ill. App., 469.

" 'A foreign mining corporation which has not engaged in mining in the state but which owns lands and rents the same is not engaged in the business for which it was incorporated within the state.' *Mo. Coal & Mining Co.* v. *Ladd,* 61 S. W., 191."

These cases need not be further noticed, for none of them, so far as appears from the statement of counsel, militate against the conclusion we reach.

The contention of counsel for the defendant is not sound. The fair name of the state and the good of the people of the state may be injuriously affected by the manner of transacting insurance business here, although transacted solely with non-residents of the state and wholly respecting property located outside the state.

The lottery could not escape upon such ground. Our criminal laws are enacted in the exercise of the same power that energizes laws regulating the business of insurance, and acts in violation of the criminal laws are not excusable on the ground that the victims are non-residents of the state.

In *State, ex rel,* v. *Ackerman,* 51 O. S., 163, 193, Williams, J., speaking of the statutory provision pertaining to foreign insurance companies says: "They are reasonable and just, and were adopted for the laudable purpose of protecting the *public* against imposition by unreliable and untrustworthy companies and associations."

Some of the statutory regulations apply only to insurance on property in this state. (Section 3643a.) But with few exceptions they are general and apply to the transaction here of the business of insurance, and Section 3641 provides that "A company organized under this chapter may: 1. Insure houses, buildings and all

other kinds of property against loss or damage by fire and lightning and tornadoes in and out of the state, and make all kinds of insurance on goods, merchandise and other property in the course of transportation, whether on land or water, or on any vessel or boat wherever the same may be."

Such a company would be transacting business of insurance in this state if it did not insure any property located in the state, but in this state entered into contracts of insurance on property outside the state, and so does a company organized under the laws of any other state.

In none of the cases we have examined is a rule laid down for determining what is transacting business in the state. Many of them determine that the doing of particular things is not the transaction of insurance business, but the reasoning in each is upon the assumption that such business is done in the state where the contract is made. *Hyde* v. *Goodnow,* 3 Comstock, 367; *Western* v. *Genesee Mut. Ins. Co.,* 12 N. Y., 258; *Columbia Fire Ins. Co.* v. *Kinyon,* 37 N. J. L., 33; *Franklin Ins. Co.* v. *Louisville & Arkansas Packet Co.,* 9 Bush., 590.

In some states it is held that the issuing of a policy of insurance on property within the state is transacting business of insurance in the state where the property is irrespective of the place where the contract is made and the policy delivered. *Swain* v. *Munson,* 191 Pa. St., 582; *Rose* v. *Kimberly & Clarke Co.,* 89 Wis., 545, but it may be doubted whether a state can make it unlawful merely to effect insurance on property in the state, contract being made with a foreign company and made and to be performed in another state. *Allgeyer* v. *Louisiana,* 165 U. S., 578. So that it is possible for the defendant company to insure property in a state without transacting the business of insurance there, and if the contention of its counsel is sound that such business transacted here is not insurance business, then it is transacting the business, but not at any place.

The business of insurance is, principally, contracting. Strictly speaking it is not insuring property. No precautions need be taken to secure or preserve the thing said to be insured.

The business is contracting with a party to indemnify him in case of loss of a particular thing; the contract is a personal contract of

indemnity and is not incidental to or transferable with the thing insured. May on Insurance, Sec. 6; *Carpenter* v. *Providence Washington Ins. Co.,* 16 Peters, 495; *Clay Fire & Marine Ins. Co.,* v. *Huron Salt & Lumber Mfg. Co.,* 31 Mich., 346.

It appears from the evidence and also from the findings that the defendant company enters into contracts of insurance in this state—all of its contracts are Ohio contracts and are valid here. The company may, because they are Ohio contracts and because of the comity shown her, enforce them in the courts of any other state, the policy of whose laws is not contravened by the contract.

The facts of this case very clearly disclose the importance of regulating the manner of doing such business in this state, regardless of the situs of the property. It appears from the evidence that the defendant company was incorporated in May, 1901, under the laws of West Virginia, for the purpose of doing a fire insurance business. Its authorized capital is $100,000, but less than $3,000 has been paid in. It has an attorney in West Virginia, in order to comply with the laws of that state, but no office. The office of the company since its organization has been at Lima, and there, so testifies its secretary; he has transacted in its name the ordinary business of fire insurance, except only that no property situate in Ohio has been insured. Himself & Co. are the general agents for the United States for the insurance company and he testifies that the "Co." is a fiction. He receives all premiums and deposits them to his own credit, the company keeping no bank account, and if any losses have been paid he has paid them. The company has issued 497 policies, 97 of which have been issued direct from the office at Lima by the secretary, and the average amount covered by each policy is three hundred dollars. The secretary testifies that he has received about $3,000 and that he has paid it all out, so that if all of these policies are still outstanding there is a liability of $150,000 and no assets.

It is ruled in *State, ex rel,* v. *Ackerman, supra,* that an insurance company carrying on its business here without obtaining permission so to do is unlawfully exercising a franchise and may be ousted, and it is so ordered.

*Geo. H. Jones,* Assistant Attorney General, for plaintiff.
*H. P. Williamson,* for defendant.