THE PEOPLE *ex rel.* C. Valette Kasson *et al.*
*v.*
JAMES A. ROSE, Secretary of State.

*Opinion filed June 18, 1898—Rehearing denied October 7, 1898.*

1. STATUTES—*courts cannot disregard plain language of statute.* It is the duty of courts to accept a statute as they find it and enforce it as plainly written.

2. INSURANCE—*guaranteeing fidelity of trust officers and performance of obligations is insurance.* The business of guaranteeing the fidelity of persons holding public or private places of trust, and the performance by persons, firms and corporations of contracts, bonds, recognizances and other undertakings, is "guaranty insurance."

3. SAME—*guaranty insurance company cannot be incorporated under the general act.* Section 1 of the act on corporations, (Rev. Stat. 1874, p. 285,) which provides that corporations may be formed thereunder for any lawful purpose "except banking, insurance," etc., excludes the organization under that act of a corporation to conduct the business of guaranty insurance.

4. SAME—*fact that guaranty insurance is of recent origin does not except it from term "insurance."* The fact that at the time the general Incorporation act was passed only fire, inland navigation, marine and life insurance companies were in existence in Illinois, does not warrant the inference that the legislature intended to include only such forms in the term "insurance" and to exclude forms of insurance then practically unknown.

CARTER, C. J., and MAGRUDER, J., dissenting.

ORIGINAL petition for *mandamus*.

CHURCH & MCMURDY, for petitioners.

E. C. AKIN, Attorney General, (C. A. HILL, and B. D. MONROE, of counsel,) for respondent.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an original petition for a *mandamus*, against James A. Rose, as Secretary of State. The petition sets forth that on January 27, 1898, the petitioners made an application to the respondent for a license authorizing them to open subscription books to the capital stock of a proposed corporation. The application was made in due form and accompanied by the requisite fee. The object of the corporation, as contained in the statement, is as follows: "To transact in the State of Illinois, and elsewhere, the business of guaranteeing the fidelity of persons holding public or private places of trust, and the performance by persons, firms and corporations of contracts, bonds, recognizances and undertakings of every kind, and of becoming surety on bonds required by law, and on every kind of contract, obligation and undertaking of persons, firms and corporations." The Secretary refused to issue the license, upon the ground that the statute under which the application is made does not authorize the organization of corporations for the objects stated in the application. Section 1 of the statute entitled "An act concerning corporations," approved April 18, 1872, provides: "That corporations may be formed in the manner provided by this act, for any lawful purpose, except banking, insurance, real estate brokerage, the operation of railroads, and the business of loaning money, provided," etc. The only question here raised is, whether or not the objects, or any of them, of the proposed corporation, fall within the exception "insurance."

The following definitions of the term "insurance" are cited from standard authorities on behalf of respondent:

"Guaranty insurance is a contract whereby one, for a consideration, agrees to indemnify another against loss arising from the want of integrity, fidelity or insolvency of employees and persons holding positions of trust, against insolvency of debtors, losses in trade, losses from non-payment of notes and other evidences of indebtedness, or against breach of contract.   It includes other forms of insurance, which are specifically classified as 'fidelity guaranty,' 'credit guaranty,' etc."   1 Joyce on Insurance, sec. 12.

"Insurance is a contract by which the one party, in consideration of a price paid to him adequate to the risk, becomes security to the other that he shall not suffer loss, prejudice or damage by the happening of the perils specified, to certain things which may be exposed to them."   *Lucine* v. *Crawford*, 2 Bos. & Pul. 300.

"Insurance, in its most general sense, is a contract whereby one party agrees to indemnify another in case he shall suffer loss in respect of a specified subject by a specified peril."   11 Am. & Eng. Ency. of Law. 280.

"Insurance is a contract whereby one, for a consideration, undertakes to compensate another if he shall suffer loss.   Such, in its most general terms, is the definition of the contract which is to constitute the subject of the following chapters.   It is substantially the definition given long ago by Roccus, and is recommended alike by its brevity and its comprehensiveness,—qualities upon which subsequent writers have scarcely been able to improve.   *   *   *   It had its origin in the necessities of commerce.   It has kept pace with its progress, expanded to meet its rising wants and to cover its ever widening fields, and, under the guidance of the spirit of modern enterprise tempered by a prudent forecast, it has, from time to time, with wonderful facility adapted itself to the new interests of an advancing civilization.   It is applicable to every form of possible loss.   Wherever danger is apprehended or protection required it holds out its

fostering hand and promises indemnity." 1 May on Insurance, secs. 1, 2.

"A contract whereby, for a stipulated consideration, one party undertakes to indemnify the other against certain risks." 1 Phillips on Insurance, sec. 1.

"A contract by which a person, in consideration of a gross sum or a periodical payment, undertakes to pay a larger sum on the happening of a particular event." Smith on Common Law, 299.

"In law, a contract by which one party, for an agreed consideration, which is proportioned to the risk involved, undertakes to compensate the other for loss on a specified thing from specified causes." Century Dic. "Insurance."

"An act or system of insuring or assuring against loss; specifically the system by or under which indemnity or pecuniary payment is guaranteed by one party, or several parties, to another party, in certain contingencies, upon specified terms." Standard Dic. "Insurance."

"The act of insuring against loss or damage by a contingent event; a contract whereby one party undertakes to indemnify or guarantee the other against loss by certain specified risks." Webster's Dic. "Insurance."

It is said in 9 Am. & Eng. Ency. of Law, 65, (cited in *People* v. *Fidelity and Casualty Co.* 153 Ill. 25): "Guaranty insurance is, in its practical sense, a guaranty or insurance against loss in case a person named shall make a designated default or be guilty of specified conduct. It is usually against the misconduct or dishonesty of an employee or officer, though sometimes against the breach of a contract. This branch of insurance is so much more modern in origin and development than fire, marine, life and accident insurance that there are few decisions upon the subject; but the business is gradually increasing, and is doubtless destined to take an important place in the commercial world. It may be confidently stated, notwithstanding the comparative absence of specific decisions, that the general principles applicable to other

classes of insurance are applicable here as well. Thus, the general doctrine of warranty, representation and concealment, as applied to fire, life and marine insurance, is applicable also to the subject of guaranty insurance. It was held in a Canadian case that a company was liable on a policy guaranteeing the faithful and diligent performance of the duty of a clerk, where such clerk went to lunch leaving a large sum of money in open bags in his room, which money disappeared while he was gone. Over-drafts allowed without security, by collusion with the party making the over-drafts, is within a policy which insures against loss 'by the want of integrity, honesty and fidelity, or by the negligence, default or irregularities of the manager.'"

In *Shakman* v. *United States Credit System Co.* 92 Wis. 366, it was held that a contract to indemnify a merchant against loss from insolvency of customers was a contract of insurance, and it was said: "We regard the contract before us as unquestionably a contract of insurance. An insurance contract is a contract whereby one party agrees to wholly or partially indemnify another for loss or damage which he may suffer from a specified peril. The peril of loss by the insolvency of customers is just as definite and real a peril to a merchant or manufacturer as the peril of loss by accident, fire, lightning or tornado, and is, in fact, much more frequent. No reason is perceived why a contract of indemnification against this ever-present peril is not just as legitimately a contract of insurance as a contract which indemnifies against the more familiar, but less frequent, peril by fire. This very contract has been (*sub silentio*) construed as a policy of insurance by the Supreme Court of New Jersey. (*Robertson* v. *United States Credit System Co.* 57 N. J. Law, 12.) The contract being, then, a contract of insurance, and the defendant's business being the making of such contracts, it follows that the defendant is an insurance corporation, within the meaning of sections 1977 and 1978, R. S."

In *Tebbets* v. *Mercantile Credit Guarantee Co.* 73 Fed. Rep. 95, the action was upon a policy of insurance against business losses or "uncollectible debts" issued by the defendant to the plaintiff, and it was said: "Insurance against mercantile losses is a new branch of the business of underwriting, and but few cases dealing with policies of that character have as yet found their way into the courts. The necessarily nice adjustments of the respective proportions of loss to be borne by the insurer and the insured, the somewhat intricate provisions which are required in order to make such business successful, and the lack of experience in formulating the stipulations to be entered into by both the parties to such a contract, have naturally tended to make the forms of policy crude and difficult of interpretation."

We do not understand counsel for petitioners to deny that under these authorities and definitions one or more of the objects stated in its application fall within the term "insurance." But it is insisted that, inasmuch as at the time of the passage of the general Incorporation law of 1872, under which they seek to organize, there were already in existence statutory provisions for the incorporation of companies known as insurance companies,—that is to say, fire, inland navigation and marine insurance companies, also life insurance companies,—and that provisions like those of the charter here sought by petitioners were practically unknown at that time, therefore the legislature did not intend, by the use of the word "insurance," other kinds of insurance than existed at that time and named in the prior enactments. The proposition is untenable. While corporations of this character have not until recently been organized, they must, under the foregoing authorities, be treated as a form of insurance companies, and as such they fall within the express limitation named in the statute. The language of the exception, in common acceptation, includes all insurance companies, and it is not for the court to say that only

certain classes were intended. "Courts cannot, as a general rule, disregard the plain language of a statute. It is their duty to accept it as they find it and enforce it as plainly written." (*Ottawa Gas Light and Coke Co.* v. *Downey,* 127 Ill. 201, and authorities cited.) "It is not the province of the judiciary to make laws, but to construe and interpret them and pass upon their validity." Referring to authorities cited, it is further said: "A careful examination of all these cases will show that where the construction given to the words of a statute is variant from their strict and literal meaning, such construction is only justified upon the ground that it effectuates the intention of the legislature as manifestly disclosed by a consideration of the whole context." *Wunderle* v. *Wunderle,* 144 Ill. 40.

The manifest purpose of the legislature in excepting banking, insurance, real estate brokerage and other corporations from the provisions of the act authorizing incorporation of companies for other lawful purposes, was, that these excepted corporations should be restrained by more strict requirements, securing the safe conduct and correct administration of their affairs. The object stated in the petitioners' application,—especially that of guaranteeing the performance by persons, firms and corporations of contracts, bonds, recognizances and undertakings of every kind,—is, not only to enter into contracts of insurance, within the meaning of the authorities cited, but within the spirit and reason of the exception.

We think the application of the petitioners was properly refused, and the petition for a writ of *mandamus* will be denied.                                   *Writ denied.*

Mr. Justice Magruder, dissenting.

Mr. Chief Justice Carter: I do not agree to the conclusions reached in this case.