**WALRUS MANUFACTURING CO., a Corporation, Plaintiff,**

v.

**NEW AMSTERDAM CASUALTY CO., a Corporation, Defendant.**

Civ. A. No. 2710.

United States District Court
S. D. Illinois, S. D.

May 24, 1960.

Monroe & McGaughey, Decatur, Ill., for plaintiff.

Gillespie, Burke & Gillespie, Springfield, Ill., Mueller & Kenney, St. Louis, Mo., for defendant.

POOS, District Judge.

Plaintiff brings suit against defendant to recover on a performance bond issued by it in Pennsylvania to United Construction Company. The United Construction Company is not a party to this proceeding. It is a resident of Pittsburgh, Pennsylvania. On September 19, 1957, the United Construction Company had a contract to provide the necessary labor and material for the installation of certain equipment in a school building in Pennsylvania. The contract to supply the equipment was signed by plaintiff, a resident of Illinois, in Decatur, Illinois, and was sent to The United Construction Company at Pittsburgh, Pennsylvania, who signed the contract on its part and returned it to plaintiff by United States mail on October 2, 1957.

The defendant is a resident of the State of New York and it executed the bond in Pittsburgh, Pennsylvania. The performance bond is attached to the motion to dismiss as Exhibit 3. The bond recites, so far as important here, that The United Construction Company as principal and New Amsterdam Casualty Company as surety, are held and firmly bound unto the State Public School Building Authority for faithful performance of the contract entered into on August 29, 1957 for the general construction of a New Secondary School Building at Neshannock Township School District, Lawrence County, Pennsylvania. As one of its conditions it provides as follows:

"Whereas, it is one of the conditions of the award of the State Public School Building Authority that these presents be executed.

"Now, therefore, the joint and several conditions of this obligation are such:

"A. If the above bounden principal as contractor shall well and faithfully do and perform the things agreed by him to be done and performed according to the terms of said contract and all relating documents thereto and made a part of said contract, including the plans and specifications therein referred to and made a part thereof, and such alterations as may be made in said plans and specifications as therein provided, and which are hereby made part of this bond the same as though they were set forth herein, and shall indemnify and save harmless the said authority and all of its officers, agents and employees from any expenses incurred through the failure of said contractor to complete the work as specified and for any damages growing out of the manner of performance of said contract by said contractor or his subcontractors, or his or their agents, or servants * * * then this part of the obligation shall be void; otherwise it shall be and remain in full

force and effect as though it was provided for and in compliance with Section 10 of the Act of July 5, 1947, P.L. 1217, as amended [24 P.S.Pa. 791.10] * * *

* * * * * *

"It is further agreed that in case of default in, and/or any action arising out of rights and liabilities secured by this obligation, any party hereto or any person claiming by or through either may use for the purpose of establishing his, its or their claim a copy of this obligation certified by the Authority and the action or actions, if any, arising on the within bond, shall not be a bar to any subsequent action that may arise through any liability incurred in any other action therein and based upon any other part of this obligation."

The principal contract guaranteed by the surety bond is made a part of the motion to dismiss as Exhibit 2. The Seventeenth Section of the contract provides:

"Any person or corporation furnishing materials or rendering services to the contractor or any subcontractor in connection with performance of this agreement may have right of action to recover for the same against the contractor and the surety on the bond given to secure the faithful performance of this agreement as though such person or corporation had been named as obligee in such bonds, provided that such suit shall not be brought later than one (1) year after the time the cause of action therefor accrued."

The face of the complaint shows that suit was filed in the Circuit Court of Macon County, Illinois, on November 4, 1959. The contract between plaintiff and United Construction Company was dated September 19, 1957, and was received in Decatur, Illinois, by U. S. Mail on October 2, 1957, and the complaint alleges that all items of equipment provided for in the contract were delivered on or prior to July 23, 1959. From all the facts as alleged and from what now appears, this suit was brought within a time not later than one (1) year after the time the cause of action therefor accrued, and the principal contract provides that suit can be brought against the surety.

The defendant moves to dismiss on the following grounds:

(1) The complaint fails to state a claim against the defendant upon which relief can be granted.

(2) The plaintiff has not the capacity to sue the defendant, because the petition filed shows on its face that the contract, under which the bond was given, was to provide the necessary labor and materials to furnish, deliver and install certain equipment in a secondary school in Lawrence County, Pennsylvania, under a subcontract executed by United Construction Company with the plaintiff at Pittsburgh, Pennsylvania.

(3) To dismiss the action on the ground the court lacks jurisdiction because the contract was performed in Pennsylvania and therefore venue cannot be laid in the State of Illinois.

(4) To dismiss the action because of want of jurisdiction over the subject matter.

(5) To dismiss the action on the ground the Court lacks jurisdiction over the person of the defendant, New Amsterdam Casualty Company; and

(6) To dismiss the action because the cause of action on which the complaint is based did not result from the transaction of any business within the State of Illinois.

One of the issues here is this: Does Sec. 17 of the Civil Practice Act control over the provisions of Section 724 of the Insurance Code of Illinois? If Section 17 controls, then the suit must be dismissed.

Section 17 of the Civil Practice Act, Chap. 110, I.R.S., 1959, is as follows:

"(1) Any person, whether or not a citizen or resident of this State,

who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State;

"(b) The commission of a tortious act within this State;

"(c) The ownership, use, or possession of any real estate situated in this State;

"(d) Contracting to insure any person, property or risk located within this State at the time of contracting.

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

"(4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law."

■■ It is perfectly clear that the purpose of this section is to provide a means of personal service over the class of cases therein provided for, so that the effect of any judgment shall be final in case it shall be further necessary to enforce the judgment in some other State. This section does not limit the jurisdiction of an Illinois court, nor does it take away from an Illinois court any jurisdiction to act. It only provides a means for enforcing under the Full Faith and Credit Clause of the United States Constitution, Const. art. 4, § 1, its jurisdiction in the cases enumerated by a statutory defined method of acquiring jurisdiction personally so that the judgment of the Illinois court rendered under the personal service provision thereof is final in future litigation. Prior to this enactment it has always been the law that if jurisdiction has been acquired by personal service of a defendant within the territorial boundaries of a court, and the judgment is not set aside by appeal, such service is binding anywhere as an unassailable final judgment. The defendant seeks to apply Section 17 of the Civil Practice Act to repeal, or at least to curtail the application of Section 724 of the Insurance Code. Subsection 4 of Section 17 expressly negatives any such interpretation because the Section specifically provides:

"Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law."

Subsection 3 of Section 17 further provides:

"Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

This subsection obviously contemplates that personal service jurisdiction over a non-resident defendant may be acquired otherwise for causes of action not enumerated therein.

As above pointed out, this Section provided a new means for acquiring personal jurisdiction. That the framers of this Act so intended is explained in Smith-Hurd Illinois Annotations to Section 17, Chap. 110, where the Joint Committee Comments, (Subsection (1), p 164), are as follows:

"This section is wholly new. It is in line with the general trend to expand jurisdiction over non-residents having 'contacts, ties or relations' with the State. The non-resident motorist statute (e. g. Ill.Rev.Stat. 1953 (S.H.A.) ch. 95½, § 23) is now almost universal  *  *  *  A num-

ber of states have statutes giving jurisdiction where individuals, partnerships or corporations engage in business activities or have business transactions within the state which do not necessarily amount to the doing of business within the state in the traditional sense."

In the Historical and Practice Notes by Jenner and Tone, following the Joint Committee Comments, it is stated:

"With the adoption of this section (as implemented by Section 16 of this chapter), Illinois has expanded the in personam jurisdiction of its courts to the limits permitted under the Due Process clause of the Fourteenth Amendment."

Thus it is obvious that this section was passed by the General Assembly for the specific purpose of enlarging in personam jurisdiction and not for the purpose of decreasing any in personam jurisdiction that the Illinois courts previously had, and the passage of this Act in no wise repealed, qualified or interfered with Sec. 724 of the Insurance Code.

The next question presented is that of Section 724 of the Insurance Code, and whether or not it is applicable to a state of facts as presented by the record here. The defendant asserts that it is a New York corporation qualified to do business in the State of Illinois; that the action is predicated upon a bond given by it to the State Public School Building Authority of Pennsylvania as surety for United Construction Company, a Pennsylvania Corporation. This bond, as above pointed out, included the plaintiff, a sub-contractor, as provided in Section 17 of the contract between United Construction Company and State Public School Building Authority, wherein the contract said, "or any subcontractor in connection with the performance of this agreement may have a right of action to recover for the same against the contractor and the surety on the bond given to secure the faithful performance of this agreement as though such person or corporation had been named as an obligee in such bond." The defendant further asserts that the bond was executed and delivered in Pennsylvania, as was the principal contract between The United Construction Company and the State Public School Building Authority; that the subcontract between "United" and the plaintiff was executed in Pennsylvania, requiring plaintiff to furnish equipment and complete the work in the New Secondary School, Neshannock Township School District, Lawrence County, Pennsylvania. The factual allegation of the complaint further shows that the subcontract was executed on the part of plaintiff in Decatur, Illinois; that the equipment was manufactured in Decatur, Illinois, in this Southern District of Illinois. "United" used the U. S. Mail as its agent to bring the contract to Decatur, Illinois, in the first instance for the signature of plaintiff, and in the second instance to return the signed contract to Decatur, Illinois. This put the plaintiff to the manufacturing of the equipment, which it eventually delivered to the school building contractor, "United", in Pennsylvania.

The original contract between "United" and "School Authority" was executed on August 29, 1957; the defendant and "United" executed the bond to "School Authority" on August 29, 1957, and the contract between plaintiff and "United" was executed on September 19, 1957. At the time of the execution of the latter, the provisions of the "Original Contract" were in full force and effect and the defendant was bound under its agreement to answer for any default on the part of "United", even to the extent that plaintiff could bring suit directly against the defendant for any default of "United".

The State of Illinois, through its police power exerted by legislative action since the early history of this State, has required foreign incorporated insurance and surety companies to consent in writing to be sued in Illinois as a prerequisite to issuing a certificate of authority to do business in this State. The statute requiring this was first enacted in Illinois in 1869, and has been in force

ever since. It is now known as Sec. 724 of the Illinois Insurance Code, S.H. A., Chap. 73, P. 169. This Section as it now reads is as follows:

"724. Service of Process. Director as Attorney.

"(1) Every foreign or alien company desiring to transact business in this State shall file with the Director a duly executed instrument whereby the company shall appoint and constitute the Director and his successor or successors in office the true and lawful attorney of such company upon whom all lawful process in any action or legal proceeding against it may be served and shall agree that any such lawful process against it which may be served upon its said attorney as provided in this section shall be of the same force and validity as if served upon the company, and that the authority thereof shall continue in force irrevocably so long as any liability of the company in the State shall remain outstanding.

"(2) Process authorized by such instrument or by any similar instrument heretofore executed shall be served by delivering to and leaving with the Director duplicate copies of such process with payment of the fee prescribed by this Code, and the service thereof upon such attorney shall be deemed service upon the company. The Director shall forthwith forward one copy of each such process by registered mail prepaid to the company, or in the case of an alien company, to the United States Manager or last appointed United States general agent of the company, giving the day and hour of such service. Service of such process shall not be complete until the copy thereof has been so mailed and received by the company, and the registry receipt shall be prima facie evidence of the completion of such service * * * ."

The question presented under this statute is this: Does a cause of action that wholly accrues outside Illinois, and as in this case in Pennsylvania, upon a complaint filed in Illinois, authorize service on a foreign company, requiring it to defend in an Illinois court? The Supreme Court of Illinois has not passed on this question, and it is up to the court to place itself in the position of the Illinois Court to make the inquiry and seek the answer in the light of judicial construction of courts that have passed on the question. The Supreme Court of Illinois has upheld this Section under the police power of this State where the question as to its purpose has been raised. The Act of 1855, among other things, required a foreign insurance company to designate an agent for service and file a written instrument authorizing such agent to acknowledge service of process on behalf of the company, and consenting that service of process upon him shall be held valid, and waiving all error by reason of such service. The statute was held to be a valid exercise of the police power to protect the people of the State. Cincinnati Mut. Health Assur. Co. v. Rosenthal, 55 Ill. 85, 89, 90. In American Central Insurance Co. v. Simpson, 43 Ill.App. 98, 104, in speaking of a similar statute, the court held that,

"The object and purpose of that legislation is that persons in this State holding insurance by foreign companies shall not be compelled to resort to other jurisdictions and travel long distances from the place where the fire occurs, and be at expense in procuring his witnesses to travel long distances; that the protection of a citizen in this State ought not to be destroyed by implication; and the same reason, that a party cannot be compelled to go away from the State to be subjected to an examination, should preclude the company from requiring that one insured should go out of the State for the purpose of arbitration and to submit his proofs. A clause in a policy that required such an act as a condition precedent to a right

of recovery would be against public policy and void."

Again in the case of Smith v. Local Branch No. 714, Iron Hall of Mt. Carmel, 77 Ill.App. 469, 472, it was held that,

"The intent of the law requiring foreign insurance companies to comply with the terms imposed, as a condition for the right to do business here, was to protect the citizen of the State from imposition by fraudulent and insolvent companies, and to facilitate collections for losses without being compelled to go to other states to establish and secure them; and each requirement of the law directly relates to acts of insurance or to something immediately growing out of the acts."

These cases are cited to show the intent behind the legislation, i. e., the protection of the citizen. In New England Mutual Life Ins. Co. v. Woodworth, 111 U.S. 138, 144, 4 S.Ct. 364, 366, 28 L.Ed. 379, 381, the Supreme Court, speaking of the Illinois Statute in question, said:

"In the growth of this country, and the expansion and ramifications of business, and the free commercial intercourse between the States of the Union, it has come to pass that large numbers of life and fire insurance companies, and other corporations, established with the accumulated capital and wealth of the richer parts of the country, seek business and contracts in distant States which open a large and profitable field. The inconveniences and hardships resulting from the necessity on the part of creditors of going to distant places to bring suits on policies and contracts, and from the additional requirement, in the case of death, of taking out letters testamentary or of administration at the original domicil of the corporation debtor in order to sue, has led to the enactment in many states, of statutes which enable resident creditors to bring suits there against corporations created by the laws of other states. Such a statute existed in Illinois, in the present case, requiring every life insurance company not organized in Illinois to appoint in writing a resident attorney, upon whom all lawful process against the company might be served with like effect as if the company existed in Illinois, the writing to stipulate that any lawful process against the company served on the attorney should be of the same legal force and validity as if served on the company, a duly authenticated copy of the writing to be filed in the office of the auditor, and the agency to be continued while any liability should remain outstanding against the company in Illinois, and the power not to be revoked until the same power should be given to another, and a like copy to be so filed; the statute also providing that service upon said attorney should be deemed sufficient service on the company. Rev.St. 1874, c. 73, § 50, p. 607. In view of this legislation and the policy embodied in it, when this corporation, not organized under the laws of Illinois, has, by virtue of those laws, a place of business in Illinois, and a general agent there, and a resident attorney there for the service of process, and can be compelled to pay its debts there by judicial process, and has issued a policy payable, on death, to an administrator, the corporation must be regarded as having a domicil there, in the sense of the rule that the debt of the policy is assets at its domicil, so as to uphold the grant of letters of administration there."

■■ Particular notice is taken that plaintiff is a citizen of Illinois and that plaintiff signed its subcontract in Illinois, the contract having been sent there by the agent of "United", the United States Mail. When "United" used the mail to send the contract that plaintiff signed to its office in Decatur, Illinois, "United" designated the United States Post Office and the U. S. Mail as its

agent to deliver the contract to plaintiff, and by so doing authorized the U. S. Mail as its agent to receive the contract executed by plaintiff after signature. The minute the plaintiff signed the contract and deposited it in the mail, it became a binding contract executed by plaintiff at the exact time it was placed in the United States Mail at Decatur, Illinois. This contract without dispute in this record was delivered to "United" in Pittsburgh. In the American Law Institute Restatement of the Law, Contracts, Sec. 69, p. 71, the rule applicable to this factual situation is announced as follows:

"An acceptance is authorized to be sent by the means used by the offeror or customary in similar transactions at the time when and the place where the offer is received, unless the terms of the offer or surrounding circumstances known to the offeree otherwise indicate."

The illustration cited is,

"1. A makes B an offer by mail. B promptly mails an acceptance. There is a contract as soon as B's letter is mailed."

In addition to this "United" signed the contract and returned it to Decatur, Illinois, place of plaintiff's residence. This put plaintiff's manufacturing process into motion in Illinois, the materials were fabricated in Illinois and shipped in interstate commerce to Pennsylvania and the defendant on default of payment by "United" under the terms of its bond became liable.

■ Under these circumstances, defendant, who was bound by everything "United" did, became liable and the court is of the opinion that defendant was doing business in Illinois admittedly by the record herein, at least to the extent that service against the defendant in this case amounts to due process as laid down by the modern rule. The defendant was authorized to do business in Illinois by virtue of the Insurance Code of Illinois, which is a continuation of the law as it existed from 1869. The defendant as a foreign insurance company was authorized to do business in Illinois under its qualification under the foreign insurance Statute as it existed in 1898. On the 13th day of November, A. D. 1898, defendant, on its qualification to do business in Illinois, executed and filed the following document:

"Know All Men By These Presents:

"That New Amsterdam Casualty Company of the City of New York, in the State of New York, having been admitted, or having applied for admission to transact business in the State of Illinois in conformity with the laws thereof, does hereby make, constitute and appoint Hon. J. R. Van Cleave or his successors to office, its true and lawful attorney in and for the State of Illinois, on whom all process of law, whether mesne or final against said Insurance Company may be served, in any action or special proceedings against said Company in the State of Illinois subject to and in accordance with all the provisions and statutes and laws of the State of Illinois, now in force, and such other Acts as may be hereafter passed amendatory thereof and supplementary thereto. And the said Attorney is hereby duly authorized and empowered, as the Agent of said Company, to receive and accept service of process in all cases as provided for by the laws of the State of Illinois and such service shall be deemed valid personal service upon said Company. This appointment is to continue in force for the period of time in the manner provided by the Statutes of the State of Illinois, and until another Attorney shall be duly and regularly substituted.

"In Witness Whereof, the said Company, in accordance with a resolution of its Board of Directors, duly passed on the 13th day of November, A. D. 1898, (a certified copy of which is hereto attached) has to these presents affixed its corpo-

rate Seal, and caused the same to be subscribed and attested by its Vice President and Secretary at the City of New York in the State of New York on the 17th day of August, A. D. 1899.

"(signed) William W. Chase,
Vice-President
"(signed)
"Charles T. Hopper, Secretary"
(Corporate Seal)

This was acknowledged as the free act and deed of the two officers and of the corporation. A certified copy of a resolution of the Board of Directors of defendant is attached, which resolution is in the exact language of the above appointment and dated Nov. 13, 1899.

■ The Court takes judicial notice of this Public Record in Illinois. Ever since then, the defendant has been doing business in Illinois. It has had the protection of the law of Illinois ever since and it can reasonably be inferred that it has done a profitable business in Illinois, otherwise it would have ceased to do business and removed itself from this State. In this case, the process of the Illinois Circuit Court of Macon County, Illinois, has been served upon it as provided under Part 2 of Sec. 724; that it had due notice of service of process cannot be denied; otherwise it would not be here moving to dismiss. The above consent as quoted authorizes the service of "all process of law, whether mesne or final, in any action against said Company in the State of Illinois." It does not limit its appointment to business done in Illinois, but says "any action * * * against said Company in the State of Illinois subject to and in accordance with all the provisions and Statutes and laws now in force, and such other Acts as may be hereafter passed amendatory thereof and supplementary thereto." Full power is given to the appointed agent, "to receive and accept service of process in all cases as provided for by the laws of the State of Illinois and such service shall be deemed valid personal service upon said Company."

■ It was required to do this before engaging in business and receiving its license in Illinois. Illinois had the power to require this. New England Mutual Life Insurance Co. v. Woodworth, supra. This designation and the power given to the appointed agent is broad and unlimited in scope, more so than is argued for by it here. The facts here show at least the minimum requirements of contact in this State as announced in International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 158, 160, 90 L.Ed. 95, 161 A.L.R. 1057, where the Court said:

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'". (Citing cases.)

Speaking of the fiction of corporate personality and of the meaning of "present" or "presence" and "an estimate of conveniences", the Court went on to say:

"'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." (Citing cases).

"Finally, although the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it, (case cited), other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. (Citing cases.) True, some of the decisions holding the corporation amenable to suit have been supported by resort to the legal fiction that it has given its consent to service and suit, consent being implied from its presence in the state through the acts of its authorized agents." (Citing cases.)

Here there is no implied presence, but a definite written consent appointing an agent for service, the consent going so far as to permit the agent "to receive and accept service of process in all cases as provided for by the laws of the State of Illinois", and also consenting that "such service shall be deemed valid personal service upon the Company."

The Court is of the opinion that the record here shows that the standards as laid down by the Supreme Court in the above case, as well as in the case of Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, are met. Here, according to the allegations of the complaint, "United" and defendant, its surety, have defaulted after demand on the obligation to pay for goods furnished. Under the contracts, original between "United" and "School Building Authority", between defendant and "United" and "School Building Authority", the surety bond, and between "United" and its surety, defendant and plaintiff, on the subcontract, all of which are attached to the complaint and sworn motion of defendant, it is apparent that the only burden of proof remaining is to compute the amount due to plaintiff for the goods furnished in completing the school building. This cannot be said to be an onerous burden on the defendant.

The position of plaintiff is further fortified by the fact that a suit on a written contract is a transitory action. The surety bond given by defendant is a written casualty contract of insurance. Suits on insurance contracts are transitory actions. See 20 C.J.S. Corporations § 1922 and see Illinois Life Insurance Co. v. Prentiss, 277 Ill. 383, 387, 115 N.E. 554. In the case of a transitory action, the rule permitting suit wherever jurisdiction of the parties can be obtained is announced in 21 C.J.S. Courts § 41, p. 48 as follows:

"An action on contract is as a general rule transitory, and may be entertained wherever jurisdiction of the parties can be obtained, regardless of where the contract was made or where it was to be performed."

Also the Illinois Courts have sustained in personam jurisdiction in cases of foreign corporations where service was procured on an agent served with process of summons in Illinois where the cause of action accrued outside Illinois. In National Can Co. v. Weirton Steel Co., 314 Ill. 280, 145 N.E. 389, the court, in a case where plaintiff, a Michigan corporation, brought suit against defendant, a West Virginia corporation, neither of whom was licensed to do business in Illinois, for breach of contract to deliver tin plate at Detroit, Michigan, the contract having been made at Weirton, West Virginia, and in which case service was procured on a business soliciting agent, unauthorized to receive service of process in Illinois, held, over the objection of defendant, that the action was transitory and that there was no statute in Illinois withdrawing permission from foreign corporations to bring suit in this class of actions in this State against foreign corporations where the cause of action arises out of the State and that the cause of action was properly brought in Illinois.

Factually the plaintiff here is in a more favorable position than the one in the above case by reason of Section

724, requiring defendant to appoint and designate an agent for service, which defendant complied with before its entry into business in Illinois. There is no justifiable reason for making a distinction between any foreign corporation because of the type of business it does.

The exact question, as here, was before the Court in the Eastern District of Illinois in the cases of Hunter Packing Co. v. Trinity Universal Insurance Co., D.C., 76 F.Supp. 173, and in Tomerlin v. London & Lancastershire Indemnity Co., D.C., 76 F.Supp. 168, 173, the Court holding in both cases that jurisdiction was acquired by service as provided under Section 724 of the Insurance Code. The same conclusion was reached in Loomis v. Federal Union Surety Co., 163 Ill.App. 621.

■ The public policy of Illinois places domestic corporations and foreign corporations on the same basis. This public policy is found in its court decisions and in its statutes. One of its court decisions on the question of validity of service is above pointed out and its positive policy as regards corporations of either class show that both are placed on the same level. No favoritism is shown for domestic corporations. Both are required to appoint registered agents; I.R.S.1959, Chap. 32, Sec. 157.11, covering domestic, Sec. 157.109, covering foreign, both are given the power to change registered agents, Sec. 157.12, covering domestic, Sec. 157.110 covering foreign, both are required to subject the registered agent to service of process, Sec. 157.13, covering domestic and Sec. 157.11, covering foreign.

Section 157.5 provides for the general powers of domestic corporations, subdivision (b) of which provides,

"Each corporation shall have power: * * *

(b) To sue and be sued, complain and defend, in its corporate name."

Section 157.103 provides for the powers of foreign corporations, viz.:

"No foreign corporation shall transact in this State any business which a corporation organized under the laws of this State is not permitted to transact. A foreign corporation which shall have received a certificate of authority under this Act shall * * * enjoy the same, but no greater, rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which such certificate of authority is issued; and, except as in this Act otherwise provided, shall be subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character."

■ Domestic corporations have the right to sue and be sued, and complain and defend in its own name. This is a privilege as well as a liability. Foreign corporations enjoy the same, but no greater rights and privileges and are subject to the same duties, restrictions, penalties, and liabilities. The statutory provisions are plain, and all the court can do is to enforce it as it is written. Loomis v. Federal Union Surety Co., 163 Ill.App. 621, 626; People ex rel. Kasson v. Rose, 174 Ill. 310, 316, 51 N. E. 246, 44 L.R.A. 124.

For the reasons herein set out the motion to dismiss is denied, and defendant is ruled to plead within 20 days from this date.