YAMADA CORPORATION *et al.*, Plaintiffs-Appellees, v. YASUDA FIRE AND MARINE INSURANCE COMPANY, LTD., *et al.*, Defendants-Appellants.

Second District   No. 2—98—1073

Opinion filed June 4, 1999.

John P. McGahey and David M. Holmes, both of Wilson, Elser, Moskowitz, Edelman & Dicker, for Chicago, for appellants.

Gerald L. Morel and Anthony J. Brouzas, both of Masuda, Funai, Eifert & Mitchell, Ltd., of Chicago, for appellees.

JUSTICE COLWELL delivered the opinion of the court:
Defendants, Yasuda Fire & Marine Insurance Company, Ltd. (Ya-

suda Fire), and the Yasuda Claims Service, Inc. (Yasuda Claims) (collectively, defendants), appeal from an order of the circuit court of Kane County granting summary judgment in favor of plaintiffs, Yamada Corporation (Yamada) and Yamada America, Inc. (Yamada America) (collectively, plaintiffs), on count I of plaintiffs' first amended complaint. On appeal, defendants contend that the trial court erroneously refused to enforce a forum-selection clause, a choice-of-law clause, and a pollution exclusion clause and erroneously struck portions of two of defendants' affidavits. We reverse and remand with directions based on the forum-selection clause.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 25, 1994, an air-operated diaphragm pump, manufactured by Yamada and purchased by CWC Fluids, Inc., d/b/a Culligan Water Conditioning (CWC), to pump acid and caustic solutions from two separate tanks to regenerate spent water purification systems, failed. The pump's failure resulted in the release of acid and caustic solutions that destroyed the metallic parts of the regeneration system enclosed within a concrete retention wall. In addition, the release produced an acid vapor that traveled through the interior of CWC's building, damaging electrical, mechanical, metallic, and other structures. When the retention wall developed a crack, the acid also spilled onto the main plant floor and into the drain to the city sewer system.

On October 1, 1996, CWC filed a complaint in the circuit court of Cook County against plaintiffs, among others, alleging strict product liability, breach of the implied warranty of merchantability, and negligence. CWC sought damages for property damage and business interruption.

Plaintiffs tendered their defense to Yasuda Fire pursuant to a general liability claims-made policy covering the period from January 5, 1995, to January 5, 1996, issued by Yasuda Fire to Yamada. Yasuda Fire rejected the tender.

Yamada was the named insured under the policy, and Yamada America, a distributor of Yamada's pumps, was listed as an additional insured. In addition, the policy included more than 200 other distributors as additional insureds, including distributors in 38 of the states in the United States, Puerto Rico, Canada, Mexico, Central America, South America, Europe, Australia, New Zealand, Asia, and the Pacific Rim.

An endorsement to the policy specifically covered the pump at issue in addition to 11 other air-operated diaphragm pumps. In addition, endorsement No. 10 to the policy contained a forum-selection

clause, entitled "Jurisdiction Clause," that provided: "It is agreed that coverage disputes arising out of this insurance shall be subject to Japanese law and forum." The print size on endorsement No. 10 was the same size as the print size in the rest of the endorsements.

The policy was negotiated, underwritten, executed, and delivered in Japan, and Yamada made premium payments in yen to Yasuda Fire in Japan. Yamada America's president admitted in his deposition that he had never purchased any general liability or products liability insurance on behalf of Yamada America, although he had purchased other types of insurance on Yamada America's behalf. Instead, Yamada purchased general liability and products liability insurance for Yamada America.

Yamada was a Japanese corporation with its principal place of business in Tokyo, Japan. Yamada America was a subsidiary of Yamada and an Illinois corporation with its principal place of business in Elgin, Illinois. Yasuda Fire was a Japanese insurance company with its principal place of business in Tokyo, Japan. Yasuda Claims was Yasuda Fire's wholly owned subsidiary incorporated in California, and its principal place of business was in Los Angeles, California. Yasuda Claims handled claims for Yasuda Fire in the United States.

On December 12, 1996, plaintiffs filed a complaint for declaratory judgment and other relief against defendants, and defendants filed a section 2—619 (735 ILCS 5/2—619 (West 1996)) motion to dismiss, relying primarily on the forum-selection clause. Defendants also subsequently filed a declaratory judgment action against plaintiffs in the Tokyo District Court in Japan. The Tokyo District Court accepted jurisdiction over the parties and the subject matter of the suit.

Plaintiffs then filed a motion to enjoin defendants from proceeding further in Japan, and Judge Melvin Dunn granted the motion, stating that defendants were "enjoined temporarily from proceeding in Tokyo, Japan with their declaratory judgment action pending further order and proceedings" in the circuit court of Kane County. Defendants later filed an interlocutory appeal (see 166 Ill. 2d R. 307(a)(1)). We affirmed the trial court's grant of a preliminary injunction. See *Yamada Corp. v. Yasuda Fire & Marine Insurance, Ltd.*, 291 Ill. App. 3d 1134 (1997) (unpublished order under Supreme Court Rule 23).

While the preliminary injunction was pending on appeal, Judge Dunn granted defendants' section 2—619 motion to dismiss pursuant to the forum-selection clause. In response, plaintiffs filed a motion to reconsider. On June 25, 1997, Judge Dunn granted plaintiffs' motion to reconsider.

Defendants subsequently filed a motion to clarify the trial court's

order. On July 21, 1997, Judge Dunn entered an order stating the basis for his ruling:

"2. Enforcement of the forum selection clause would require the plaintiffs to proceed in Japan and under Japanese law which would thereby create enormous inconvenience and expense for the plaintiffs.

3. Illinois public policy requires that forum selection clause [sic] be deemed unenforceable in that persons and entities living and doing business in Illinois would be required to proceed in Japan and under Japanese law where costs and attorney fees incurred would not be compensable.

4. Illinois is an appropriate forum for resolving all disputes between the parties regarding coverage under the Policy of Insurance."

The trial court also granted plaintiffs leave to file a first amended complaint. In their first amended complaint, plaintiffs sought a determination regarding defendants' duty to defend and duty to indemnify in counts I and II. Plaintiffs also brought causes of action for breach of contract in counts III and IV and causes of action under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1996)) and the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1996)) in counts V and VI.

Thereafter, defendants filed a motion to reconsider the trial court's June 25, 1997, and July 21, 1997, orders and alternatively sought certification to appeal. Judge Dunn denied the motion.

Defendants then filed their answers and affirmative defenses to plaintiffs' first amended complaint. Plaintiffs later filed a motion for summary judgment on count I of their first amended complaint, and defendants sought summary judgment on all counts of the first amended complaint.

On March 4, 1998, Judge Dixon requested that the parties further brief the forum-selection clause issue. After the parties briefed the issue, this court denied a petition for leave to appeal the forum-selection clause issue, and Judge Dixon indicated that he would consider the issue as part of the motions for summary judgment. Judge Dixon then granted plaintiffs' motion. Regarding the forum-selection clause, Judge Dixon stated that Judge Dunn had previously ruled that the clause was unenforceable and that this court had declined to review the issue on an interlocutory basis. Defendants appealed.

## STANDARD OF REVIEW

■ The disposition of a summary judgment motion is not discretionary and the standard of review is *de novo. Flint v. Court Appointed Special Advocates of Du Page County, Inc.*, 285 Ill. App. 3d 152, 162

(1996). In addition, an appeal from a final judgment draws into issue all prior nonfinal orders that produced the final judgment. *United States Fire Insurance Co. v. Aetna Life & Casualty*, 291 Ill. App. 3d 991, 996 (1997).

## ANALYSIS

■ A forum-selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would contravene the strong public policy of the state in which the case is brought (*Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 74 (1994)), or that the chosen forum would be so seriously inconvenient for trial that the opposing party would be deprived of his or her day in court. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15, 18, 32 L. Ed. 2d 513, 520, 523, 525, 92 S. Ct. 1907, 1913, 1916, 1917 (1972); *Calanca v. D&S Manufacturing Co.*, 157 Ill. App. 3d 85, 87-88 (1987).

## I. MANDATORY FORUM-SELECTION CLAUSE

■ The first issue is whether the clause is mandatory or permissive. The clause at issue provides that "coverage disputes arising out of this insurance shall be subject to Japanese law and forum." The word "shall" indicates that Japan is the exclusive forum. See *Calanca*, 157 Ill. App. 3d at 85 (stating that word "shall" in forum-selection clause means the stated forum is exclusive).

## II. INCONVENIENCE

■ A party to the contract may not successfully argue inconvenience as a reason for rendering a forum-selection clause unenforceable if both parties freely entered into the agreement contemplating such inconvenience should there be a dispute. *Maher*, 267 Ill. App. 3d at 74-75; see also *The Bremen*, 407 U.S. at 16-18, 32 L. Ed. 2d at 524-25, 92 S. Ct. at 1916-17; *Calanca*, 157 Ill. App. 3d at 88. Furthermore, a forum-selection clause made during an arm's-length negotiation between experienced and sophisticated businesspeople should be honored and enforced absent some "compelling and countervailing reason" otherwise. *Maher*, 267 Ill. App. 3d at 75; see also *The Bremen*, 407 U.S. at 12, 32 L. Ed. 2d at 521, 92 S. Ct. at 1914; *Calanca*, 157 Ill. App. 3d at 88.

Neither Judge Dunn nor Judge Dixon ruled that plaintiffs would be so seriously inconvenienced that they would be deprived of their day in court if this action proceeded in Japan. Judge Dunn, however, apparently believed that Japan would be inconvenient when he ruled that "[e]nforcement of the forum selection clause would require the plaintiffs to proceed in Japan and under Japanese law which would thereby create enormous inconvenience and expense for the plaintiffs."

■ To determine whether a forum-selection clause is unreasonable, this court should consider the following factors: (1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance of the contract; (4) the location of the parties and witnesses participating in the litigation; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for. *Calanca*, 157 Ill. App. 3d at 88. By applying these six factors to the present case, it is apparent that plaintiffs did not meet their burden of proving that the forum-selection clause was so seriously unreasonable that they would be deprived of their day in court.

### 1. Formation and Construction

■ The policy contains an express choice-of-law provision designating Japanese law as the controlling law. In addition, absent an express choice-of-law provision, insurance policy provisions are generally " 'governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.' " *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 526-27 (1995), quoting *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill. 2d 522, 528 (1975).

In the present case, the policy covered air-powered diaphragm pumps distributed around the world. The policy was negotiated, executed, delivered, and paid for in Japan. The insurer, Yasuda Fire, was a Japanese corporation, and Yamada, the named insured, was a Japanese corporation. The policy, however, also covered more than 200 additional insureds around the world. Illinois' only connection to the policy is the fact that 3 of the more than 200 additional insureds, including Yamada America, were located in Illinois, and the pump at issue in the CWC complaint allegedly failed in Illinois. As a result, we believe that Japanese law should govern the formation and construction of the contract to "obtain a consistent interpretation" of the policies (see *Lapham-Hickey*, 166 Ill. 2d at 527). A contrary result would open up these policies to possibly hundreds of different views of the law, depending on the site of the risk.

### 2. Residency

A corporation is a resident of the state or country under whose laws it was organized. *LeBlanc v. G.D. Searle & Co.*, 178 Ill. App. 3d 236, 238 (1988). Consequently, Yamada is a resident of Japan, Yamada America is a resident of Illinois, Yasuda Fire is a resident of Japan,

and Yasuda Claims is a resident of California. Again, Illinois' only tie is through Yamada America, an additional insured under the policy.

### 3. Execution and Performance

The policy was executed in Japan. Performance, on the other hand, was to occur all over the world.

### 4. Location of Parties and Witnesses

Two of the parties participating in the litigation are located in Japan, one is located in California, and one is located in Illinois. In addition, no witnesses are necessary.

The entire complaint rests on count I regarding defendants' duty to defend. Without a duty to defend, there is no duty to indemnify. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993). Similarly, without a duty to defend, there can be no breach of contract or violation of the Consumer Fraud Act or section 155 of the Illinois Insurance Code.

To determine whether an insurer has a duty to defend an insured, the court must compare the allegations of the underlying complaint to the policy language, and if the court determines that these allegations fall within or potentially within the policy's coverage, the insurer has a duty to defend. *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 323 (1998). Thus, the determination of the duty to defend in this case is a legal question that requires no witnesses.

### 5. Inconvenience of Location

Regarding inconvenience, Illinois is inconvenient for Yasuda Fire. Japan, however, is not inconvenient to Yamada, Yasuda Fire, or Yasuda Claims. Additionally, Yamada America's directors reside in Japan and hold meetings at Yamada's headquarters in Japan. Moreover, Yamada America was not responsible for purchasing general liability insurance; rather, Yamada purchased the general liability insurance policy on Yamada America's behalf. Furthermore, the clause provides Yamada with the assurance that its products distributed around the world will be covered under one uniform law leading to certainty, consistency, and convenience.

### 6. Bargaining Power

There is no evidence in the record that the policy was not equally bargained for. Based on the number of products covered, the complexity of those products, the number of additional insureds, and the location of distributors worldwide, it is safe to presume that Yamada is a sophisticated insured.

Based on the factors enumerated in *Calanca*, there is little evidence that enforcement of the forum-selection clause would be unreasonable. Furthermore, there is no evidence in the record that would demonstrate that plaintiffs would be denied their day in court.

## III. PUBLIC POLICY

Plaintiffs also argue that the forum-selection clause violates Illinois public policy. According to plaintiffs, "[t]he fundamental public policy at stake in the present action is to protect insureds and injured third parties in an effort to make sure that there is coverage available for a given claim," citing *DC Electronics, Inc. v. Employers Modern Life Co.*, 90 Ill. App. 3d 342 (1980), and *Walrus Manufacturing Co. v. New Amsterdam Casualty Co.*, 184 F. Supp. 214 (S.D. Ill. 1960).

*DC Electronics*, however, does not stand for this proposition. The only reference to public policy in *DC Electronics* is the following: "Any attempt by [the insurance company] to dilute or diminish statutory provisions applicable to its contract of insurance is contrary to public policy, and any conflict between statutory and policy provisions will be resolved in favor of the statutory provisions." *DC Electronics*, 90 Ill. App. 3d at 348. Plaintiffs in the present case do not argue that Yasuda Fire's policy provisions dilute or diminish any statutory provisions in the Illinois Insurance Code. In contrast, in *DC Electronics*, the insurance company argued that the policy language requiring a renewal premium to have been paid within 31 days of an expiration date applied even though the applicable section of the Illinois Insurance Code extended the period of payment to six months. *DC Electronics*, 90 Ill. App. 3d at 348.

Likewise, *Walrus Manufacturing* does not stand for the above-stated proposition. Besides the pronouncement that "[t]he public policy of Illinois places domestic corporations and foreign corporations on the same basis" (*Walrus Manufacturing*, 184 F. Supp. at 224), the *Walrus Manufacturing* court did not address Illinois public policy. That case, however, does contain a quote from *American Central Insurance Co. v. Simpson*, 43 Ill. App. 98 (1892), regarding an unidentified statute in which the court stated:

> " 'The object and purpose of that legislation is that persons in this State holding insurance by foreign companies shall not be compelled to resort to other jurisdictions and travel long distances from the place where the fire occurs, and be at expense in procuring his witnesses to travel long distances; that the protection of a citizen in this State ought not to be destroyed by implication; and the same reason, that a party cannot be compelled to go away from the State to be subjected to an examination, should preclude the company from requiring that one insured should go out of the

State for the purpose of arbitration and to submit his proofs. A clause in a policy that required such an act as a condition precedent to a right of recovery would be against public policy and void.' " *Walrus Manufacturing*, 184 F. Supp. at 219, quoting *American Central*, 43 Ill. App. at 104. This quotation, however, does not address the alleged public policy of protecting insureds and injured third parties to ensure insurance coverage.

■ In fact, there is no public policy in Illinois ensuring that there is insurance coverage for insureds and injured third parties. Admittedly, Illinois courts liberally construe the insurance policy and the underlying complaint in favor of the insured when determining the duty to defend. *Federated Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 282 Ill. App. 3d 716, 725 (1996). Similarly, Illinois courts liberally construe any doubts as to coverage in favor of the insured, especially when the insurer seeks to avoid coverage based on an exclusion in the policy. *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 722 (1995). Conversely, courts should not torture the language of a policy to find coverage where none clearly exists. *Cohen Furniture Co. v. St. Paul Insurance Co.*, 214 Ill. App. 3d 408, 411 (1991). An Illinois court simply cannot find insurance coverage where no insurance coverage exists; as a result, there is no public policy in Illinois ensuring insurance coverage.

■ Additionally, there is no public policy in Illinois disfavoring forum-selection clauses. See *Dace International, Inc. v. Apple Computer, Inc.*, 275 Ill. App. 3d 234, 239 (1995). Likewise, there is no public policy in Illinois against the pollution exclusion in insurance policies.

■ Plaintiffs further argue that the enforcement of the forum-selection clause would violate public policy because no Japanese court has ever interpreted a pollution exclusion clause. Plaintiffs cite no authority for the proposition that a public policy exists in Illinois to ensure that insurance contract provisions are interpreted by courts experienced in construing the clause at issue. Arguments without citation to authority do not merit consideration on appeal. *People ex rel. Aldworth v. Dutkanych*, 112 Ill. 2d 505, 511 (1986). In addition, Illinois does not have a public policy that dictates that only courts with experience may rule upon issues of law. In fact, Illinois courts address issues of first impression all the time.

Plaintiffs also argue that ''the protection of insureds is a fundamental Illinois public policy [ ] manifest[ed] in caselaw [*sic*] and statute'' and state that ''Illinois[ ] has a comprehensive statutory scheme for insurers under the Illinois Insurance Code,'' citing *Emer-*

*son v. American Bankers Insurance Co.*, 223 Ill. App. 3d 929 (1992). *Emerson*, however, does not even mention Illinois public policy. Additionally, *Emerson* does not contain the statement of law contained in plaintiffs' brief. The only connection *Emerson* has to the Illinois Insurance Code is the fact that the plaintiffs therein sought damages under section 155 of the Code. See *Emerson*, 223 Ill. App. 3d at 932.

■ Plaintiffs additionally state that "the Illinois common law has a strong public policy to protect insureds and injured parties, who have claims for which coverage had been intended." Plaintiffs cite no authority in support of this statement. As we previously stated, arguments without citation to authority do not merit consideration on appeal. *People ex rel. Aldworth*, 112 Ill. 2d at 511.

■ Finally, plaintiffs assert that the forum-selection clause should not be enforced because Japanese law allegedly does not provide for certain remedies found under Illinois law. For instance, Japanese law allegedly does not provide for fees, costs, and exemplary damages as provided for under section 155 of the Illinois Insurance Code. In addition, Japanese law allegedly does not have remedies similar to the statutory remedies available to consumers under the Consumer Fraud Act. Plaintiffs then argue that, as a result, Japanese law does not afford the same protections to plaintiffs as Illinois law. On July 21, 1997, Judge Dunn agreed with this argument when he ruled that "Illinois public policy requires that forum selection clause [*sic*] be deemed unenforceable in that persons and entities living and doing business in Illinois would be required to proceed in Japan and under Japanese law where costs and attorney fees incurred would not be compensable."

The fact that an international transaction may be subject to laws and remedies different from or less favorable than those of the United States is not alone a valid basis to deny the enforcement of forum-selection clauses. *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993). The seventh circuit also stated:

> " 'It defies reason to suggest that a plaintiff may circumvent forum selection . . . merely by stating claims under laws not recognized by the forum selected in the agreement. A plaintiff would simply have to allege violations of his country's tort law or his country's statutory law or his country's property law in order to render nugatory any forum selection clause that implicitly or explicitly required the application of the law of another jurisdiction. We refuse to allow a party's solemn promise to be defeated by artful pleading.' " (Emphasis omitted.) *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 211 (7th Cir. 1993), quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993).

In *Hoes of America, Inc. v. Hoes*, 493 F. Supp. 1205 (C.D. Ill. 1979), the

United States District Court for the Central District of Illinois found that the plaintiff in that action, an Illinois corporation that filed suit in the federal court in Illinois, accepted a trial without a jury and no punitive damages in Germany when it entered into a contract that contained a forum-selection clause designating Bremen, Germany, as the forum. Based on the foregoing, we find that the enforcement of the forum-selection clause in this case would not violate Illinois public policy.

We also reject plaintiffs' reliance on *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69 (1994), to argue that we may void the forum-selection clause if it violated fundamental Illinois public policy. While we agree that plaintiffs' statement is a correct statement of the law, we find *Maher* distinguishable. In *Maher*, the plaintiff relied on the Sales Representative Act (820 ILCS 120/0.01 *et seq.* (West 1992)), and section 2 of that act provided that "[a]ny provision in any contract between a sales representative and principal purporting to waive any of the provisions of this Act shall be void" (820 ILCS 120/2 (West 1992)). Based on this provision, the court found that the legislature was announcing fundamental public policy protecting sales representatives. In the present case, plaintiffs do not direct us to a similar provision in the Illinois Insurance Code, and we were unable to locate a similar provision ourselves.

We note that plaintiffs also argue that defendants' reliance on federal case law is inappropriate because the cited federal cases follow the strictly federal common-law test for applying forum-selection clauses, a test that plaintiffs describe as a more onerous standard. One of the cases plaintiffs cite for this proposition is *The Bremen*. Illinois courts, however, adopted the analysis in that case long ago and have since relied on federal case law when interpreting forum-selection clauses. See, *e.g., Calanca*, 157 Ill. App. 3d 85. Thus, we reject plaintiffs' argument that the defendants' reliance on federal case law is inappropriate.

Plaintiffs further argue that defendants should be estopped from relying on the forum-selection clause because defendants allegedly failed to reserve their rights or seek a declaratory judgment. Where a complaint presents a case of potential coverage, the insurer must defend under a reservation of right or seek a declaratory judgment. *John Burns Construction Co. v. Indiana Insurance Co.*, 299 Ill. App. 3d 169, 175 (1998). An insurer that fails to exercise either of these two options will be estopped from later raising any policy defenses. *John Burns Construction Co.*, 299 Ill. App. 3d at 175. The forum-selection clause, however, is not a policy defense. As a result, we reject this argument.

374

Based upon the foregoing, we reverse the judgment of the circuit court of Kane County granting summary judgment in plaintiffs' favor on count I of the first amended complaint and remand this matter to the circuit court with directions to dismiss this matter pursuant to the forum-selection clause.

Reversed and remanded with directions.

GEIGER and THOMAS, JJ., concur.