HARRY KALINOWSKI and ADELAINE KALINOWSKI, husband and wife, Plaintiffs–Appellees, v. JIM AN–CHI YEH and LISA KWOCK QUE LUM YEH, husband and wife, Defendants–Appellants

NO. 15666

(CIVIL NO. 89–3573)

MARCH 24, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

**474**

## OPINION OF THE COURT BY WATANABE, J.

Plaintiffs Harry and Adelaine Kalinowski (Kalinowskis) brought the instant action, seeking specific performance of a contract to purchase a condominium unit from Defendants Jim and Lisa Yeh (Yehs). The trial court held for the Kalinowskis, and we affirm.

### FACTS AND PROCEDURAL HISTORY

On May 26, 1989, the Yehs signed a "Deposit, Receipt, Offer, and Acceptance" (DROA) to purchase a new home under construction in Mililani, Hawaii (Mililani DROA). Closing of the transaction was to take place on August 30, 1989; however, the Yehs' offer was contingent upon the successful sale of their condominium unit in Salt Lake, Hawaii, and closing by July 30, 1989.

On May 29, 1989, the Kalinowskis signed a DROA to purchase the Yehs' Salt Lake condominium unit for $150,000 (Salt Lake DROA). The sale was to close "on or before July 27, 1989," and was contingent upon: (1) the Kalinowskis' ability to secure a loan to finance the purchase; (2) the acceptance of the Yehs' offer to purchase the Mililani home by May 31, 1989; and (3) the successful closing of the Mililani transaction before the closing date of the Salt Lake transaction. The Salt Lake DROA was executed on the standard DROA form used by the real estate industry in

Hawaii. Preprinted on the back of the form were standard terms applicable to the DROA, including the following "time is of the essence" clause:

### K. TIME IS OF THE ESSENCE:

If either Buyer or Seller for reasons beyond his control cannot perform his obligation to purchase or sell the property by the closing date, then such party by giving escrow written notice prior to the closing date called for in this contract with copies to all parties to this contract, can extend closing for no longer than 30 calendar days to allow performance. Thereafter time is of the essence and the default provisions of Paragraph H. apply. Any further extension must then be agreed to in writing by both parties. There is no automatic right to extend. This provision relates only to the extension of the closing date.

In late July of 1989, it became apparent to the Kalinowskis that they would be unable to fully process their loan application by the July 27, 1989 closing date. The Kalinowskis, therefore, immediately exercised their right under the "time is of the essence" clause to extend the closing date an additional 30 calendar days, until August 26, 1989, and notice of this extension was served on the escrow company by the Yehs on July 25, 1989. On July 26, 1989, American Savings Bank issued a loan commitment letter to the Kalinowskis, the terms of which the Kalinowskis accepted on July 31, 1989. Since that date, the Kalinowskis have been ready, willing, and able to perform their obligations under the Salt Lake DROA.

Due to construction delays, however, the Yehs were unable to close their Mililani transaction on the originally scheduled date. Consequently, the Yehs requested and obtained from the Kalinowskis two thirty–day extensions, which extended the Salt Lake DROA closing date to October 30, 1989.

When the Yehs' Mililani purchase had still not closed by the October 30, 1989 date, the Kalinowskis were willing to extend the closing date once again. However, the Yehs, invoking the "time is of the essence" clause of the DROA, canceled the sale and agreed to pay for any loan and escrow expenses incurred by the Kalinowskis until the date of cancellation. Several days later, the Yehs agreed to sell the Salt Lake condominium unit to another buyer for $176,000.[1]

The Kalinowskis thereafter filed a complaint for specific performance of the Salt Lake DROA. After a jury–waived trial, the trial court concluded that the Yehs had waived the "time is of the essence" clause and ordered them to specifically perform the subject DROA. This timely appeal followed.

## DISCUSSION

Ten years ago, the Hawaii Supreme Court, in *Freeman v. Boyce*, 66 Haw. 327, 661 P.2d 702 (1983), addressed a situation very similar to the instant case. The vendors and purchasers in *Freeman* had entered into a standard form executory contract for the sale of real property, with a projected closing date of February 1. Due to the threat of a lawsuit by previous prospective purchasers, however, the vendors indicated their intention not to honor the contract, and the purchasers sued for specific performance. In ruling for the purchasers, the supreme court noted that time is seldom regarded "as absolute or unbending within the context of a bilateral contract for the purchase and sale of land," and since time was not made essential to the particular contract, the vendors could not unilaterally cancel the contract. 66 Haw. at 332, 661 P.2d at 705. The court also held that it was not inequitable or

---

[1] The Yehs' agreement with the second buyer was subsequently canceled due to the pendency of this lawsuit.

unreasonable to require the vendors to specifically perform the contract four months after the projected closing date, since the delay in closing was attributable to them. 66 Haw. at 333–34, 661 P.2d at 706.

In the instant case, unlike in *Freeman*, a specific "time is of the essence" clause is included in the DROA. According to the Yehs, the integrity of this clause was reaffirmed by the parties each time they executed specific and clear written extensions of the closing date. Therefore, the Yehs contend that since the parties agreed to extend the closing date only until October 30, 1989, the DROA became "null and void" on that date, releasing them from all further obligations under the DROA. As a result, the Yehs allege that the trial court erred in awarding the Kalinowskis specific performance of the DROA. We disagree with the Yehs.

### "Time is of the Essence" Clause

Generally, in contracts for the sale of land, payment or conveyance at the exact time specified in the DROA is not regarded as "of the essence" because "the injury caused by delay is little or nothing. Delays are frequent in these transactions; and it is the custom of [people] to overlook them, even though they may have stated in advance that they would not." 3A A. Corbin, *Corbin on Contracts* § 716 at 367 (1951). Furthermore, it is well–recognized that "[n]o [person] should profit by his [or her] own wrong. . . . [T]he principle is expressed in the rule that no person can defend against contractual liability on grounds of a condition precedent when he [or she] is responsible for that condition precedent not being complied with." 2 A. Corbin, *Corbin on Contracts* § 310 at 44–45 (1950 & Supp. 1992).

In the instant case, the evidence is undisputed that the Kalinowskis fully performed all their obligations under the Salt Lake DROA and have, since July 31, 1989, been ready, willing, and able to go through with the purchase. The sole cause preventing the Salt Lake transaction from closing on schedule was that

construction of the Yehs' Mililani home, the condition precedent to the Yehs' performance, had been delayed. In other words, it was the Yehs' inability to perform that made it impossible to close the Salt Lake transaction on the agreed–upon dates. Moreover, the record amply indicates that the Yehs did not consider timely closing of the Salt Lake transaction to be essential, since just eight days after canceling their deal with the Kalinowskis, they entered into another DROA, agreeing to sell the Salt Lake condominium unit to another buyer on an even later closing date. This second DROA expressly mentions that construction of the Mililani house was "scheduled to be completed three weeks from October 26, 1989." It was thus apparent that when the Yehs canceled their deal with the Kalinowskis, they fully expected their Mililani home to be completed within three weeks, satisfying the condition precedent that had been the principal cause for the delay in the closing of the Salt Lake transaction. Under these circumstances, the Yehs cannot rely on the "time is of the essence" clause to cancel their agreement with the Kalinowskis and thereby take advantage of the appreciation in real estate values.

Other courts have reached the same conclusion under similar circumstances. In *Kimm v. Andrews*, 270 Md. 601, 313 A.2d 466 (1974), the Maryland Court of Appeals was called upon to resolve a dispute involving two written contracts for the sale of the same land and improvements thereon. The first contract, with the Kimms, provided that "[p]rior to settlement, Sellers will show buyers location of boundary stakes, septic system, and water pipes." 270 Md. at 604, 313 A.2d at 468. It also stated that time was of the essence and set March 31 as the settlement date. Although the Kimms made several appointments to inspect the premises, the sellers, due to illness, were unable to keep the appointments, and, consequently, settlement did not occur as scheduled. The Kimms and the sellers then orally extended the settlement date to April 5. However, on April 4, the attorney for the second purchasers, the

Andrews, advised the sellers that the Kimms' contract had lapsed on March 31 because timely performance had not been made as required by the "time is of the essence" clause. The sellers then signed a contract to convey the land to the Andrews but subsequently reneged on this contract and deeded the property to the Kimms. The Andrews thereafter sued for specific performance. Reversing the trial court's judgment for the Andrews, the appellate court stated:

> *[O]rdinarily* a contract for the sale of land containing a clause that "time is of the essence" must be performed by the date fixed in the contract or the contract is no longer viable. This general rule is, however, subject to the limitation that such a contract may nevertheless be specifically enforced if the failure to perform within the designated time results from the act or fault of the party against whom specific performance is demanded.

270 Md. at 612, 313 A.2d at 472 (emphasis in original).

In *Alk v. Lanini*, 61 Or. App. 158, 656 P.2d 367 (1982), *review denied*, 294 Or. 613, 661 P.2d 549 (1983), the plaintiffs entered into a contract with the defendants to purchase 293 acres of land. Under the contract, which included a "time is of the essence" clause, closing was to occur on December 15, 1978, at which time defendants were required to deliver to plaintiffs a proper deed with marketable title, free from all encumbrances. The defendants discovered, however, that a cloud on their title existed and they were compelled to file a quiet title action to deliver a proper deed. The parties subsequently signed two agreements, extending the closing date to October 15, 1979, and, while no further extension agreements were thereafter signed by the parties, plaintiffs were ready, willing, and able to perform their obligations under the contract when the quiet title decree was finally entered in defendants' favor. Meanwhile, however, the defendants had changed their minds and argued that because time was of the essence under the contract and

the parties had agreed to extend the closing, only until October 15, 1979, the contract lapsed on that date, freeing them from all further obligations. Disagreeing, the Oregon Court of Appeals said in part:

> Defendants' argument must . . . fail because a party to a contract cannot take advantage of his own failure to perform, and defendants were responsible, at least in part, for the fact that the transaction did not close on schedule.

61 Or. App. at 162, 656 P.2d at 369 (citations omitted).

The Yehs testified at trial that the reason they had declined to extend the closing date past October 30, 1989 was that they were being required by the Kalinowskis to pay the financing fees being charged the Kalinowskis due to the closing delays. The record shows that when the Yehs sought to extend closing until October 30, 1989, the Kalinowskis requested that the Yehs agree to pay any additional financing fees incurred by them due to the extension, but the Yehs refused. Despite the Yehs' refusal, the Kalinowskis agreed to extend closing until October 30, 1989. According to the record, the Yehs only offered to pay the financing fees once they decided not to extend closing beyond October 30, 1989. Therefore, the Yehs' testimony is not supported by the record.

## Specific Performance

The Yehs insist that specific performance is an extraordinary remedy that should not have been awarded the Kalinowskis by the trial court.

However, it is a well–accepted principle that "where the parties have fairly and understandingly entered into a valid contract for the sale of real property, specific performance of the contract is a matter of right and equity will enforce it, absent circumstances of oppression and fraud." *Giannini v. First Nat'l Bank of Des Plaines*, 136 Ill. App. 3d·971, 981, 483 N.E.2d 924, 933 (1985). *See also Hurst v. Kukahi*, 25 Haw. 194 (1919) (specific

performance of a contract for the sale of land will be decreed when there does not appear to have been any unfairness, injustice, or inequality). The rationale for this principle is explained in the *Restatement (Second) of Contracts* as follows:

> Contracts for the sale of land have traditionally been accorded a special place in the law of specific performance. A specific tract of land has long been regarded as unique and impossible of duplication by the use of any amount of money. Furthermore, the value of land is to some extent speculative. Damages have therefore been regarded as inadequate to enforce a duty to transfer an interest in land[.]

*Restatement (Second) of Contracts* § 360, comment e, at 174 (1981).

Whether this principle applies to a contract for the sale of a specific condominium unit has never previously been addressed by the Hawaii appellate courts. However, courts in other jurisdictions have generally concluded that the remedy of specific performance is available to a purchaser of a specific condominium unit. In *Giannini, supra,* for example, the Illinois Appellate Court held that where there was no evidence that other condominium units were available for purchase by the buyer at the same price, terms, or conditions, the buyer of a specific condominium unit was entitled to the remedy of specific performance. 136 Ill. App. 3d at 981, 483 N.E.2d at 933. The New Jersey Superior Court more broadly held in *Pruitt v. Graziano,* 215 N.J. Super. 330, 521 A.2d 1313 (1987), that "a contract of sale of a designated condominium unit like any real property is specifically enforceable by the purchaser irrespective of any special proof of its uniqueness." 215 N.J. Super. at 332, 521 A.2d at 1314–15.

In the instant case, there is no evidence that the Kalinowskis would have been able to buy an identical unit in the same condominium project at no more than the same price, terms, and condi-

tions. Instead, the evidence reveals that market prices for the Yehs' unit had rapidly escalated between the time of the Kalinowskis' offer and the termination of the agreement by the Yehs, rendering it unlikely that the Kalinowskis could obtain a condominium unit in the same project at no more than the price agreed upon in the Salt Lake DROA. Moreover, the Kalinowskis were entirely blameless in their own transactional conduct and expectations, and we see no reason to deprive them of the benefit of their bargain.

Accordingly, we affirm the judgment of the trial court granting the Kalinowskis specific performance of their agreement to purchase the Yehs' condominium unit.

*Collin K. C. Lau* on the briefs for defendants–appellants.

*C. Andrew Englehart* (*Ward F. Olsen* with him on the brief) for plaintiffs–appellees.