In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-1835

ABBOTT LABORATORIES,

*Plaintiff-Appellant*,

*v.*

TAKEDA PHARMACEUTICAL COMPANY LIMITED, *et al.*,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 3758—**Ronald A. Guzmán**, *Judge*.

———————

ARGUED OCTOBER 16, 2006—DECIDED FEBRUARY 2, 2007

———————

Before POSNER, RIPPLE, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. In 1977, Abbott Laboratories and the Japanese pharmaceuticals manufacturer Takeda formed a 50-50 joint venture, Takeda-Abbott Products, to engage in pharmaceutical research and development. In 1985 the parties converted it into a Delaware corporation, TAP Pharmaceuticals, which they continued to own equally; each of the joint venturers was therefore entitled to choose half the members of TAP's board of directors. The 1985 agreement also expanded the scope of the joint venture to include the distribution of pharmaceu-

ticals. In that regard the agreement provided that both Abbott and Takeda could contract with TAP to furnish it with bulk product for it to distribute. TAP was to select bulk suppliers "on the basis of the economic advantage to TAP," but was to give the original supplier of the bulk product "the first opportunity to quote on" resupplying it. The parties further agreed "to utilize their voting power in [TAP] in such a manner as to effectuate the intent of" both the 1977 and 1985 agreements.

In 1995 Takeda made a contract to supply TAP for ten years with bulk lansoprazole, a drug for treating symptoms of heartburn and acid reflux, which TAP marketed under the name Prevacid. In 2004, shortly before the contract expired, TAP's board of directors voted to renew it. Six months later Abbott filed this suit against Takeda. The complaint charges that the defendant, in breach of a fiduciary duty to Abbott imposed by Delaware law (remember that TAP is a Delaware corporation), had coerced Abbott to instruct its directors on TAP's board to vote to renew the contract, even though the contract price was excessive. Takeda had been able to coerce Abbott, the complaint explains, by threatening to stop supplying lansoprazole to TAP. How such a threat could be credible is unclear; and one might also wonder how Takeda could benefit from forcing TAP, of which it was half owner, to pay an exorbitant price for a critical input. Wouldn't that be cutting off one's nose to spite one's face? Abbott's answer is that by forcing renewal at an exorbitant price and thus increasing Takeda's profits but TAP's costs (and so reducing TAP's profits), Takeda would come out ahead because half of TAP's profits go to Abbott but all of Takeda's profits go to Takeda.

Abbott filed its suit in the federal district court in Chicago, basing federal jurisdiction on diversity of citizenship. The choice of forum was a surprise. The 1985 agreement between Abbott and Takeda that created TAP states that "in the event of a dispute between [Abbott and Takeda] arising from, concerning or in any way related to this Agreement," suit shall be brought in Japan if Abbott is the plaintiff and in Illinois if Takeda is the plaintiff. The purpose of specifying two forums in this way is to discourage either side from instituting litigation, because whoever sues must litigate on the other party's turf. Compare *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). The downside is that if a dispute arises, each party may try to maneuver the other into suing first, and such maneuvers could make litigation more likely. But the parties, being commercially sophisticated entities, must have thought this effect of such a forum selection clause less likely than its effect in discouraging litigation. The district court held the clause valid and applicable, and so dismissed the suit, precipitating this appeal.

The 1985 agreement states that it "shall be governed by the laws of the State of Illinois." But there is a question whether this provision bound the district court, and binds us, with respect to forum selection. We left open the question whether federal or state law governs the validity and interpretation of such clauses in diversity suits in *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 609 (7th Cir. 2006). We noted that if federal law applies there may be an invitation to forum shopping because the state law may be different, but that if state law applies the determination of the forum for the litigation is withdrawn from the federal courts even though they have an independent interest in determining whether

the suit is litigated in a federal district court and if so in which one. Neither consideration figures in this case. There is no risk of forum shopping, because if Abbott had filed its suit in a state court Takeda could have removed it to a federal court in the same state. And it is a matter of indifference to the federal judiciary whether the forum selection clause in this case is enforced—it is no skin off the federal courts' back if this suit is litigated in Japan, but at the same time there is nothing about the litigation that would make it abnormally burdensome to the federal district court in Chicago, as might be a concern if that court somehow lacked the procedural or other resources that are required for resolving an international commercial dispute.

Simplicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears, *Northwestern National Ins. Co. v. Donovan*, 916 F.2d 372, 375-76 (7th Cir. 1990); *Yavuz v. 66 MM, Ltd.*, 465 F.3d 418, 428 (10th Cir. 2006); *Gleich v. Tastefully Simple, Inc.*, No. 05 C 1415, 2005 WL 3299187, at *5 (N.D. Ill. Dec. 2, 2005), rather than making the court apply two different bodies of law in the same case. This implies that Illinois law governs the validity of the forum selection clause in this case.

But while as we noted in *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, *supra*, 437 F.3d at 611-13, there are differences of nuance between the federal and the Illinois standards for determining the validity of a forum selection clause, there is agreement between the jurisdic-

tions that ordinarily the parties' contractual choice of forum should be overridden only if that choice would impose significant costs on third parties or on the judicial system. Compare *id*. at 613; *AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 525 n. 9 (7th Cir. 2001), and *Northwestern National Ins. Co. v. Donovan*, *supra*, 916 F.2d at 376, with *Aon Corp. v. Utley*, No. 1-05-2824, 2006 Ill. App. LEXIS 1021, at *19-21 (Ill. App. Nov. 9, 2006); *Yamada Corp. v. Yasuda Fire & Marine Ins. Co.*, 712 N.E.2d 926, 934 (Ill. App. 1999), and *Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 23-24 (Ill. App. 1987) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). Neither basis for a finding of invalidity is present in this case, and there is no contention that Abbott was coerced or deceived into agreeing to the clause—Abbott proposed it to Takeda. The clause is valid, and so we turn to the question of its meaning, where again no difference between federal and Illinois principles of interpretation (if there is a difference, which we doubt) would affect the outcome.

The clause is about as broadly worded as could be imagined, and at least as a semantic matter it certainly embraces Abbott's suit. The breach of fiduciary obligation of its co-venturer about which Abbott complains arose out of the corporate structure created by the agreement, out of the provision of the agreement relating to contracts with bulk suppliers, out of the deadlock potential that the contractual provision for a 50-50 division of shares and directors created, and out of the contractual duty of the parties to vote their shares in a manner that would achieve the purpose of the agreement, which was to share profits equally—an intent that Takeda's conduct, if Abbott can be believed, flouted. So the wrong of which Abbott's suit complains arises from the 1985 agreement

and even more clearly is related to it—the first thing a court asked to adjudicate the suit would want to look at would be the agreement.

Abbott argues, however, that under Illinois principles for the interpretation of forum selection clauses, a dispute "relates to" an agreement only if resolution of the dispute requires interpretation of the agreement. This would mean that if Takeda acknowledged breaking the contract, Abbott wouldn't have to sue in Japan because there would be no interpretive issue. That makes no sense; and the case that Abbott cites in support, *Boatwright v. Delott*, 642 N.E.2d 875, 877 (Ill. App. 1994), is inapposite. It does say that "forum selection clauses apply to tort claims *which require interpretation of the contract*." (Emphasis added.) But the clause in *Boatwright* was much narrower than the one in this case. It said nothing about arising from or concerning or related to. Instead it said: "This Contract shall be governed by and construed in accordance with the law of the state of Texas *applicable to contracts*." (Emphasis added.)

Abbott repeats its argument in different words when it says that since its suit is a tort suit—a suit for breach of a fiduciary duty to a partner in a joint venture—it arises out of Delaware tort law rather than out of the 1985 agreement. But the forum selection clause does not apply just to the litigation of *claims* that arise out of, concern, etc., the contract; it applies to the litigation of *disputes* that arise out of, concern, etc., the contract. *American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222-23 (5th Cir. 1998); *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997). The dispute is the parties' disagreement over the validity and

interpretation of the clause; the law of Delaware is (the parties agree—though perhaps they shouldn't, as we'll see in a moment) merely the body of law that will be used to resolve the dispute. Even if the clause said "claim" rather than "dispute," Abbott's argument would fail. A claim of breach of contract arises from the contract and from the parties' conduct relating to the alleged breach.

Abbott cites *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149 (Del. 2002), for the proposition that a claim of breach of fiduciary duty (in that case of a majority stockholder to the minority stockholders) is not "related to" (or, in the words of *Parfi*, "in connection with") the agreement creating the contractual relationship between the parties; in that case it was the agreement by which the plaintiffs acquired their minority interest in the corporation. Just as in its handling of the *Boatwright* case, Abbott overlooks a critical distinction between *Parfi* (which, incidentally, is not an Illinois case) and the present case. *Parfi* involved the interpretation not of a forum selection clause but of an arbitration clause, and the competence of arbitrators, who are not professional judges and often aren't even lawyers, is usually (though not always, see *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 829 (D.C. Cir. 1987)) limited to contractual interpretation, rather than extending to the determination of tort claims, such as breach of fiduciary duty. *Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566, 1567-68 (11th Cir. 1984); see *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003) (plurality opinion); *Hudson v. Chicago Teachers Union*, 743 F.2d 1187, 1195-96 (7th Cir. 1984); *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union*, 359 F.2d 598, 602-03 (2d Cir. 1966). Japanese courts are staffed by professional judges competent to adjudicate

tort claims, including claims of fiduciary duty arising under Delaware law, which the parties assume Japanese courts would apply by virtue of the choice of law provision in the 1985 agreement; the provision requires disputes to be resolved by the application of Illinois law.

Illinois conflicts of law principles do suggest that Delaware law governs Abbott's claim of breach of fiduciary duty. *Spillyards v. Abboud*, 662 N.E.2d 1358, 1361 (Ill. App. 1996); *Libco Corp. v. Roland*, 426 N.E.2d 309, 312 (Ill. App. 1981); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 285 (7th Cir. 1981) (Illinois law). But we doubt that the choice of law provision in the agreement was meant to incorporate the *entire* law of Illinois, including its conflicts of law principles. The usual assumption is that such a provision designates the law that will be applied to any dispute that arises out of the contract in which the provision is found. No matter; whether Illinois or Delaware law governs the issue of fiduciary duty, Japanese courts are competent to resolve the issue.

It was natural for parties in the position Abbott and Takeda were in when they negotiated the 1985 agreement to want a dispute arising from an alleged abuse of voting power to be encompassed by the forum selection clause. That was probably the likeliest dispute to arise, and one they would be particularly desirous of resolving amicably, the goal of the clause. Were Abbott's interpretation of the clause correct, moreover, we would be at a loss to know how the clause *could* have been drafted to bring this dispute within its scope. At argument Abbott's lawyer suggested that "the parties' relationship" could have been substituted for "this Agreement." But that would have invited Abbott to argue that the dispute in this case arose not from the parties' relationship but from

Takeda's unilateral misconduct and Delaware fiduciary law.

Abbott has one good interpretive argument, which is that a "but for" test of "arising out of" or "related to" would be unsound. For then if Abbott and Takeda had a dispute over an unrelated agreement made 20 years later, Takeda could argue that it arose from the 1985 agreement because if it hadn't been for what the parties learned about each other in operating under the agreement they would not have included in the later agreement the clause giving rise to the dispute. Takeda's lawyer at argument readily conceded that the forum selection clause should not be stretched that far, that is, to its literal limits. "But-for causation is an unsatisfactory understanding of language referring to 'disputes arising out of' an agreement. Let us suppose that while inspecting Omron's facilities, a manager of Maclaren stepped on a baby rattle and fell. Would the ensuing tort litigation go to the High Court of Justice in the United Kingdom just because, but for the distribution agreement, none of Maclaren's employees would have been on Omron's premises?" *Omron Healthcare, Inc. v. MacLaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994); see also *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 559-60 (7th Cir. 2006); *Gavin v. AT & T Corp.*, 464 F.3d 634, 639-40 (7th Cir. 2006); *Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 762-63 (7th Cir. 1998). The fact that a clause is broadly worded to stop up loopholes doesn't justify a literal interpretation that carries far beyond any purpose that can reasonably be imputed to the drafter. "When a statute is broadly worded in order to prevent loopholes from being drilled in it by ingenious lawyers, there is a danger of its being applied to situations absurdly remote from the concerns of the statute's framers." *Fitzgerald v.*

*Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997); see also *Tyson v. International Brotherhood of Teamsters, Local 710 Pension Fund*, 811 F.2d 1145, 1149 (7th Cir. 1987). And so it is with a forum selection clause. But this cannot carry the day for Abbott. Its dispute with Takeda is not remote from the purpose of the forum selection clause, but at its heart.

All that is left for Abbott to argue is that it would be "unreasonable" to force it to litigate its suit in Japan. If so, Illinois law would not require compliance with the forum selection clause. *Yamada Corp. v. Yasuda Fire & Marine Ins. Co.*, *supra*, 712 N.E.2d at 932; *Calanca v. D & S Mfg. Co.*, *supra*, 510 N.E.2d at 23; cf. *M/S Bremen v. Zapata Off-Shore Co.*, *supra*, 407 U.S. at 10. But what Abbott means by "unreasonable" is simply that Japan is a less convenient forum than Illinois for the litigation of this dispute. Maybe so. And maybe therefore if the choice of forum were governed by the doctrine of *forum non conveniens* Abbott would be permitted to remain in Illinois, since balance of convenience is the standard for application of the doctrine. But a forum selection clause is a substitute for the doctrine, not another name for it, and so the test of reasonableness must be different from a test of convenience. When it signed the 1985 agreement, Abbott (which, remember, proposed the clause) could and no doubt did consider the potential inconvenience of litigating in Japan, but decided to risk it. It is bound by its choice. *Id.* at 16-17; *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, *supra*, 437 F.3d at 613.

AFFIRMED.

A true Copy:

      Teste:

 

                         _____

                      *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*