In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3648

TIMOTHY OZINGA, et al.,

*Plaintiffs-Appellants*,

*v.*

SYLVIA MATHEWS BURWELL, in her
official capacity as Secretary, United
States Department of Health
and Human Services, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-03292 — **Thomas M. Durkin**, *Judge.*

ARGUED NOVEMBER 1, 2016 — DECIDED DECEMBER 27, 2016

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* Ozinga Brothers, Inc., is a family-
owned firm supplying ready-mix concrete products and
services to builders primarily in the Chicago metropolitan area.

The company, along with its owners and senior managers (collectively, "Ozinga") filed this suit in 2013, challenging the so-called contraception mandate embodied in federal regulations implementing a provision of the Patient Protection and Affordable Care Act of 2010 that requires non-exempt and non-grandfathered group health plans to provide specified preventative-health services to plan participants without cost-sharing. *See* 42 U.S.C. § 300gg-13(a)(4); 45 C.F.R. § 147.130(a)(1)(iv); 29 C.F.R. § 2590.715-2713(a)(1)(iv); 26 C.F.R. § 54.9815-2713(a)(1)(iv); http://hrsa.gov/womensguidelines (women's preventative service guidelines). Employers who refuse to provide those services are subject to substantial fines. *See* 26 U.S.C. § 4980H. Ozinga regards certain of the contraceptives covered by the mandate as potential abortifacients, the use of which is proscribed by the firm owners' and managers' religious tenets. Invoking the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq.,* among other statutory and constitutional provisions, Ozinga sought declaratory and injunctive relief barring the enforcement of the mandate.

By the time Ozinga filed suit in 2013, the government had established an accommodation for certain religious employers that provided for alternate means of ensuring employee access to the contraceptive services specified by the mandate without payment or direct involvement by an objecting employer. 76 Fed. Reg. 46,621, at 46,623 (Aug. 3, 2011); 77 Fed. Reg. 8725 (Feb. 15, 2012); *see also* 78 Fed. Reg. 39,870, at 39,873–882 (July 2, 2013) (simplifying and clarifying criteria identifying employers eligible for exemption); 45 C.F.R. §147.131(a) & b(2)(i). However, the accommodation was not then available to any for-profit employers like Ozinga Brothers. Ozinga's complaint

highlighted the discrepancy. R. 1 ¶¶ 105–08, 112–16, 170–76, 227–28, 245. At the same time, the complaint made no allegation suggesting that an extension of the accommodation to for-profit firms would be insufficient to resolve their religious objections to the mandate.

Ozinga's suit was part of an initial wave of lawsuits challenging the application of the contraception mandate to for-profit firms. In the first such cases to reach this court, we held that the objecting closely-held firms were entitled to preliminary injunctions barring enforcement of the mandate. We concluded that the firms were likely to prevail on their claims under the RFRA that the mandate substantially burdened the religious rights of both the firms and their owners, *see* § 2000bb-1(a), and that the government was unlikely to show that it had employed the least restrictive means of furthering its asserted interest in increasing access to contraceptives, *see* § 2000bb-1(b). *Korte v. Sebelius*, 528 F. App'x 583 (7th Cir. 2012) (non-precedential decision) ("*Korte I*") (granting interim relief pending appeal); *Grote v. Sebelius*, 708 F.3d 850 (7th Cir. 2013) (same); *Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013) ("*Korte II*") (holding plaintiff companies were entitled to preliminary injunctive relief).

Without opposition from the government, and in light of our decisions in *Korte I* and *Grote*, the district court granted the Ozingas' motion for a preliminary injunction against enforcement of the mandate against Ozinga Brothers; it also stayed further proceedings pending our resolution of the merits of the *Korte* and *Grote* appeals.

This first wave of litigation culminated in the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014). The Court concluded that the contraception mandate, as applied to closely-held private firms whose owners objected on religious grounds to one or more forms of contraceptives covered by the mandate, substantially burdened the exercise of religion by those owners—and by extension, their companies—in view of the fines to which they were subject if they did not comply with the mandate. *Id.* at 2768–79. The Court reasoned that the mandate was not the least restrictive means of furthering the government's interest in making contraceptives widely available, given that the government could (among other alternatives), extend the existing accommodation for religiously-affiliated, not-for-profit employers to closely-held for-profit employers. *Id.* at 2782–83. The Court left open the question whether that accommodation in its particulars "complies with RFRA for purposes of all religious claims." *Id.* at 2782; *see also id.* at 2763 n.9.

In the wake of the *Hobby Lobby* decision, the government in July 2015 extended the accommodation to closely held for-profit employers who object to the mandate on religious grounds. 80 Fed. Reg. 41,318, at 41,322–328 (July 14, 2015); *see* 45 C.F.R. § 147.131(b)(2)(ii).

In the meantime, a second wave of litigation challenging the contraception mandate had commenced in federal courts around the country. This round of litigation was instigated by various not-for-profit employers to whom the accommodation had been available from the start. These employers contested the adequacy of the accommodation, which imposes certain procedural requirements on an objecting employer, to protect

their religious interests. This court rejected the challenges brought by these not-for-profit employers in multiple decisions. *See Univ. of Notre Dame v. Burwell*, 786 F.3d 606 (7th Cir. 2015), *cert. granted, j. vacated, & remanded*, 136 S. Ct. 2007 (2016); *Wheaton Coll. v. Burwell*, 791 F.3d 792 (7th Cir. 2015); *Grace Schools v. Burwell*, 801 F.3d 788 (7th Cir. 2015), *cert. granted, j. vacated, & remanded*, 136 S. Ct. 2010, 2011 (2016). Ultimately, when the Supreme Court took up this line of challenges in *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (per curiam), the Court declined to reach the merits of the issues presented. Instead, the Court remanded these cases to the lower courts in order to afford the parties an opportunity to see if the accommodation could be modified in such a way as to address the religious concerns of the objecting employers while continuing to meet the government's interest in making contraceptive services available to employees. The government solicited public comments on possible modifications, 81 Fed. Reg. 47,741 (July 22, 2016); the period for such comments has closed, and potential revisions to the accommodation are under advisement.

This second wave of litigation challenging the sufficiency of the accommodation was in full swing in September 2015 when the district court in this case considered what form of permanent injunctive relief to order in view of the Supreme Court's decision in *Hobby Lobby*. The parties presented the court with competing proposals: the plaintiffs sought a broad injunction precluding enforcement of any regulation promulgated in furtherance of the mandate, even one which included the accommodation that had been extended to not-for-profit employers. The government, by contrast, asked the court to

enter an injunction limited to the original version of the mandate, which of course had made no accommodation available to for-profit employers. The government's proposal would leave open the option of applying the mandate to a closely-held employer like Ozinga Brothers, so long as it provided the company with the type of accommodation it had made available to not-for-profit religious employers. The court decided to adopt the government's proposal and entered a permanent injunction limited to the mandate as it existed prior to the Supreme Court's decision in *Hobby Lobby*. But the injunction provided that "nothing herein prevents plaintiffs from filing a new civil action to challenge the accommodations or any other post-*Hobby Lobby* changes in statute or regulation." R. 54 at 2–3. The court's order accompanying the injunction set forth the court's rationale for choosing the injunction proposed by the government over the broader injunction proposed by Ozinga. R. 53.

Ozinga contends on appeal that the district court abused its discretion and otherwise erred in entering the more limited injunction proposed by the government rather than the injunction that Ozinga itself proposed. Ozinga reasons that the injunction as entered provides no lasting relief to the plaintiffs because it is limited to a state of affairs pre-dating *Hobby Lobby*—one that no longer exists. Additionally, it contends that the district court's injunction does not comply with Federal Rule of Procedure 65(d)(1)(A), in that it contains an insufficient recitation of the factual and legal bases for the limited relief that the court ordered. Ozinga adds that the court did not meaningfully exercise its discretion in choosing the government's proposed injunction over its own, as evidenced by the

lack of findings supporting its decision. None of these objections is meritorious.

The district court appropriately confined the injunctive relief it ordered to the particular challenge presented by Ozinga's complaint. *See J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 653 (7th Cir. 2014). Ozinga's suit was focused on the mandate as it was originally adopted, with no accommodation addressed to closely held for-profit employers like Ozinga Brothers who object to the mandate on religious grounds. Once the Supreme Court sustained the objections of Ozinga and similarly-situated employers in *Hobby Lobby*, the regulations challenged in the complaint were revised to extend the accommodation previously available only to objecting not-for-profit employers to objecting for-profit, closely-held companies like Ozinga Brothers. At that point, the plaintiffs had achieved the goal that their complaint sought: the availability of an accommodation that (ostensibly) removed them from the provision of objectionable contraceptive services to their employees. As the plaintiffs themselves would subsequently assert in their fee petition, they were "wholly successful in obtaining all the relief they sought" in the litigation. R. 82 at 21. Nothing in their complaint presented any question as to the adequacy of the accommodation itself. Nor at any time during the pendency of the suit had the plaintiffs sought to amend their complaint to challenge the accommodation, notwithstanding the second wave of litigation by other employers presenting such challenges. The court thus had no reason to broaden the injunction to address a potential concern about the adequacy of the accommodation when the plaintiffs themselves had not presented such a concern to the court. It

was enough that the injunction preserved the plaintiffs' right to file a separate action challenging any post-*Hobby Lobby* revisions to the statute and the regulations. There was no abuse of discretion in the court's decision. *See generally Russian Media Group, LLC v. Cable America, Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) (appropriate scope of injunction is left to district court's sound discretion) (citing *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1272 (7th Cir. 1995)).

As for Ozinga's argument that the injunction does not contain sufficient findings supporting the relief ordered, we find no error that warrants a reversal or remand pursuant to Rule 65. Rule 65(d)(1)(A) requires that every order granting an injunction must, among other things, "state the reasons why it issued." A key purpose of that requirement is to enable informed appellate review of the district court's exercise of discretion in awarding injunctive relief. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007). But there can be no mystery as to why the district court chose to enter the injunction it did: the order granting the injunction fully sets forth the court's reasoning, and *that* is the order to which Rule 65(d) applies. Rule 65(d)(1)(A); *New York State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 398 (2d Cir. 1992), *cert. granted & j. vacated on other grounds*, 507 U.S. 901, 113 S. Ct. 1233 (1993); *United States v. Reader's Digest Ass'n*, 662 F.2d 955, 970 (3d Cir. 1981); *Hunter v. United States*, 388 F.2d 148, 155 n.6 (9th Cir. 1967); *see Bates v. Johnson*, 901 F.2d 1424, 1427–28 (7th Cir. 1990) (distinguishing between injunction and court's opinion or oral remarks expressing intent to enjoin party and reasons therefore, and collecting cases).

To the extent Ozinga insists that the court's order should have contained a more detailed exposition of the bases for the injunctive relief it chose to order, the Supreme Court's decision in *Hobby Lobby*, which the district court cited in its order, supplies all of the rationale that may have been necessary. Ozinga, after all, was but one of many for-profit employers that challenged the mandate; indeed, by the time it filed suit, the first such challenges were already arriving on our doorstep and resulting in rulings favorable to the objecting employers. Thus, Ozinga was given preliminary relief from the mandate and proceedings were stayed while similar challenges worked their way to the Supreme Court. Once *Hobby Lobby* was decided, the parties agreed that Ozinga was entitled to permanent injunctive relief. The only question as to the scope of the injunction was whether Ozinga's complaint sought more relief than the Supreme Court's decision had already produced; it did not. In short, the final injunctive relief to which Ozinga was entitled turned on larger legal developments—which would already be known to anyone familiar with the *Hobby Lobby* litigation—and the scope of Ozinga's complaint, rather than any facts unique to this case. Indeed, although Ozinga points to the recitals in its own proposed injunction as an example of what Rule 65(d) requires, *see* R. 45-2 at 1–3, those recitals largely set forth the history of the first-wave litigation culminating in *Hobby Lobby*. All of this is to say that any arguable failure to comply with Rule 65(d)—and we are not convinced there was a failure—was surely harmless. *See Mesa Petroleum Co. v. Cities Serv. Co.*, 715 F.2d 1425, 1433–34 (10th Cir. 1983) (in view of clear applicability of Supreme Court precedent, absence of specific findings required by Rule 65(d)

harmless). The court's reasons for entering the injunctive relief that it did are evident from the nature of Ozinga's suit and the *Hobby Lobby* decision itself. *See also Chatas v. Local 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508, 513 (7th Cir. 2000) (rationale for injunction evident from defendant's consent to injunction and district court's observation that plaintiffs had obtained all the relief to which they were entitled).

Finally, we reject Ozinga's suggestion that the district court did not meaningfully exercise its discretion. There can be no question that the court considered both of the proposals submitted by the parties, and the order that the court issued in conjunction with the injunction it entered details its reasons for choosing the government's proposed injunction over Ozinga's. *See* R. 53 at 3–4. Ozinga faults the court for citing the similar injunctions entered by courts in other suits challenging the mandate, *see* R. 53 at 4, but the record makes clear that this was but one reason the court entered the order that it did; the court was not simply following other courts by rote. The court not only exercised its discretion but, as we have already said, did so appropriately.

Because the permanent injunction that the district court entered accorded the plaintiffs all of the relief they had sought in their complaint and to which the Supreme Court's decision in *Hobby Lobby* entitled them, their appellate challenge to the injunction has no merit. We AFFIRM the judgment.